## THE STATE v. ESTIS, *Appellant.*

1. **Resisting Legal Process**: SUFFICIENCY OF INDICTMENT. An indictment for resisting service of a warrant of arrest, is not bad because it fails to charge in express terms that the officer had the warrant in his possession at the time the resistance was offered.

2. ———: ASSAULT. An indictment which charges that the defendant did obstruct, resist and oppose an officer attempting to effect his arrest "by making an assault," and did then and there shoot at the officer with certain pistols loaded with gunpowder and leaden balls, is not bad because the assault is not charged to have been made with a deadly weapon. The other facts stated make it good under section 29, page 449, Wag. Stat., without any express charge of assault. (*State v. Phelan*, 65 Mo. 547.)

3. ———: CERTAINTY OF CHARGE AS TO TIME. An indictment for resisting arrest charged that on the 6th day of November, 1876, a warrant was issued for the arrest of defendant upon a charge that on the 26th day of October previous, he had obtained certain goods under false pretenses, that an officer, on the 20th day of January, 1879, proceeded to make the arrest, and that defendant *then and there* resisted arrest. *Held*, not bad for uncertainty as to the time when the resistance was made.

4. **Indictment**: EVIDENCE: VARIANCE. An indictment contained what purported to be a *verbatim* copy of a warrant for the arrest of defendant for obtaining goods under false pretenses. The warrant offered in evidence charged the defendant with obtaining goods "*unde fales pretens.*" *Held*, that the variance was immaterial both at common law and under section 22, page 1089, Wag. Stat.

5. **Resisting Arrest**: EVIDENCE. An indictment for resisting arrest under a warrant, need not show to whom the warrant was delivered by the officer who issued it; nor need this be shown at the trial. It is immaterial through what agency it reaches the hands of the officer whose duty it is to serve it.

6. ———: EVIDENCE. On the trial of an indictment for resisting arrest under legal process, evidence to show that threats of personal violence had been made against the prisoner, (but not by the officer who made the arrest,) is inadmissible.

8.   **Criminal Practice**: REMARKS OF PROSECUTING ATTORNEY.   During the argument the prosecuting attorney made use of the remark: " Malice may bud and bloom in a man's heart almost in a moment, or in a short time."   *Held*, that this afforded no ground for reversing the judgment.

*Appeal from Clay Circuit Court.*—HON. GEO. W. DUNN, Judge.

AFFIRMED.

Indictment for resisting arrest by a constable.   During the argument of the case to the jury the prosecuting attorney made use of this remark:   Malice may bud and bloom in a man's heart almost in a moment, or in a short time. The other facts appear in the opinion.   Defendant was convicted and appealed.

*Samuel Hardwicke, H. L. Routt, W. M. Burris* for appellant.

1.   The indictment does not charge, nor is it proven, that at the time of the commission of the alleged offense the constable had in his possession a warrant for the arrest of defendant.   Without this he had no right to make the arrest, and defendant had a right to resist.   Const. Mo., art. 2, § 30;  Wag. Stat., § 36, p. 1079 ; Ib., § 8, p. 1072 ; *Johnson v. State,* 5 Texas App. 43.

2.   The indictment undertakes to set out the warrant by its tenor.   It must do so *verbatim.*   Wharton Am. Crim. Law, 307 *et seq.*   The variances between the warrant as set out and as proven, are fatal.   *Rex v. Beech,* 1 Leach Cr. C. 158; 1 Bishop Crim. Proced., § 311; *State v. Henderson,* 15 Mo. 486.

3.   The court erred in refusing to allow witness Smith Story to answer question in regard to previous threats of parties against defendant.   It had already been proven that on two former occasions parties without a warrant, and among them this same Lynn, who was constable at this

time, had molested this same house in search of defendant; and if threats had been made by parties against defendant, and he had reason to believe that he would not be allowed to have a trial in the courts, he certainly was entitled to show the threats against him indicating the *animus* of defendant, if for nothing else in mitigation of the offense in the eyes of the jury.

4. The court should have rebuked the prosecuting attorney for making use of the remark, "Malice may bud and bloom in a man's heart almost in a moment, or in a short time." In stating this he was stating a matter of law to the jury which was not his province.

5. The indictment is fatally defective in not charging that the assault was committed with a deadly weapon; and also because of uncertainty as to time. *Jane. v. State*, 3 Mo. 63; *State v. Hardwick*, 2 Mo. 228; *State v. McCracken*, 20 Mo. 411; *State v. Hayes*, 24 Mo. 358.

*J. L. Smith*, Attorney-General, for the State.

1. The indictment is good. It is in the language of the statute, (Wag. Stat., § 29, p. 449,) and that is sufficient. *State v. Phelan*, 65 Mo. 547. Nor is there any uncertainty as to time. The words " then and there " can refer only to the date last before mentioned, January 20th, 1879. It is certainly good after verdict. *State v. Freeman*, 21 Mo. 481; *State v. Bailey*, 21 Mo. 484; *State v. Steeley*, 65 Mo. 218; *State v. Stumbo*, 26 Mo. 306; Wag. Stat., § 27, p. 1090.

2. The variances between the warrant as set out in the indictment and as offered in evidence, are immaterial. 2 Wag. Stat., § 22, p. 1089; 1 Wharton Crim. Law, (9 Ed.) §§ 309, 606; *Rex v. Hart*, 1 Leach Cr. C. 172; *Comm. v. Parmenter*, 5 Pick. 279; *Comm. v. Riley*, Thacher's Crim. C. 67; *United States v. Hinman*, 1 Bald. C. C. 292; 2 Russ. on Crimes, (9 Ed.) 799, 800.

3. It was not necessary to show to whom the justice delivered the warrant. It was legal and regular on its face,

was issued by an officer having jurisdiction so to do, and, directed to Lynn, and when it came into his hands, from any source whatsoever, it was his duty to execute, and the defendant's duty to obey, it.  *State v. Weed*, 21 N. H. 262 ; *Comm. v. Martin*, 98 Mass. 4 ; *Faris v. State*, 3 Ohio St. 159 ; *Boyd v. State*, 17 Ga. 194 ; *State v. Green*, 66 Mo. 631.

4.   We think it conclusively appears that the warrant was in Lynn's possession during all this time.   But that is not a material inquiry under the circumstances of the case. The fact whether Lynn had the possession of the warrant or not, is of no consequence, so far as the defendant's guilt is concerned.   When he demanded that the defendant surrender, and gave notice that he had a warrant for his arrest, it was defendant's duty to obey.   If he refused and resisted the officer after the demand and notice, he is guilty as charged.   *Rex v. Curtis*, Foster's Crim. Law 135 ; 1 East P. C., ch. 5, § 81, pp. 314, 315 ; *Comm. v. Cooley*, 6 Gray 350 ; *State v. Green*, 66 Mo. 631, 649.

5.   The court properly excluded the evidence of threats. The defendant was notified that a constable had come to arrest him, having a warrant for that purpose.   He was in law bound to yield ; his refusal to do so, and his subsequent assault on the officer constituted a violation of the statutes of this State.   Facts which would go to show him innocent, if the arrest have been attempted by certain other parties, constitute no defense to the charge of an assault upon Lynn.   If he did not believe what was told him by Lynn, and chose to act contrary to his demand, he did so at his peril.   His mistake cannot excuse him.   *State v. Green, supra*.   If every idle threat made against a person charged with crime is to furnish justification for an assault upon an officer attempting to arrest such person, every offender may with impunity resist arrest, and officers will be without the protection of that law whose ministers they are, and at the mercy of every offender whom they may be compelled to arrest.   *State v. Oliver*, 2 Houst. (Del.) 585.

SHERWOOD, C. J.—Various objections are urged against the indictment, which is in these words:

STATE OF MISSOURI, } ss.
   County of Clay,

In the circuit court of Clay county, Missouri, February term, A. D. 1879: The grand jurors for the State of Missouri, summoned from the body of the county of Clay aforesaid, empaneled, charged and sworn, upon their oaths present, that on the 6th day of November, 1876, at the county of Clay aforesaid, John V. B. Flack came before James P. Withers, who was then and there a justice of the peace in and for Fishing River township, in said county, and then and there made complaint on oath, before said James P. Withers, justice of the peace, that one John C. Estis, *alias* George Estis, then lately before, to-wit: on the 26th day of October, 1876, at the county of Clay aforesaid, feloniously and designedly, with intent to cheat and defraud said John V. B. Flack, did falsely pretend to the said John V. B. Flack that one John Williams was owing him, the said John C. Estis, *alias* George Estis, a large sum of money, to-wit: the sum of $20 for work and labor performed by the said John C. Estis, *alias* George Estis, for said John Williams; and the said John V. B. Flack believing the said false pretenses, so made as aforesaid to be true, and being deceived thereby, was induced by reason thereof to accept an order given by said John C. Estis, *alias* George Estis, on said John Williams for the sum of $5, the consideration of a pair of boots of the value of $5, which said pair of boots the said John V. B. Flack then and there sold and delivered to the said John C. Estis, and that the said John C. Estis, *alias* George Estis, by means of said false pretenses, so, made to the said John V. B. Flack as aforesaid, unlawfully, feloniously and designedly did obtain of and from the said John V. B. Flack the said pair of boots of the value of $5, of the goods and chattels of the said John V. B. Flack, with intent him, the said

John V. B. Flack, then and there to cheat and defraud of the same, whereas in truth and in fact, the said John Williams was not owing at the said time aforesaid the said John C. Estis, *alias* George Estis, the said sum of $20, or any other sum of money whatsoever for work and labor performed by the said John C. Estis for the said John Will iams; the said John C. Estis then and there being guilty of obtaining the said pair of boots aforesaid under false pretenses, against the peace and dignity of the State; which said complaint is in words and figures following, to-wit:

"STATE OF MISSOURI, ⎞ ss:
    County of Clay, ⎠

"On the 6th day of November, 1876, personally appeared before me, a justice of the peace in and for said county, John V. B. Flack, who, being duly sworn on his oath, states, that on or about the 26th day of October, 1876, at said county of Clay, one John C. Estis, *alias* George Estis, did then and there unlawfully obtain by false pretenses of the said John Flack goods to the amount of $5 viz: to one pair of boots, the said John C. Estis giving the said John Flack a written order on John Williams for $5, thereby obtaining the boots.

"JOHN V. B. FLACK.

"Subscribed and sworn to before me this 6th day of November, 1876.

"JAMES P. WITHERS, Justice of the Peace."

And that thereupon the said James P. Withers, as such justice of the peace, then and there issued his warrant and legal process under his hand, commonly called a State warrant, in the words and figures following:

STATE WARRANT—J. P.

STATE OF MISSOURI, ⎞ ss.      THE STATE OF MISSOURI
    County of Clay; ⎠
*To the Sheriff or any Constable of said County—Greeting:*
Whereas, complaint has been made before me, one of

the justices of the peace in and for the county aforesaid, upon the oath of John V. B. Flack, that John C. Estis, *alias* George Estis, late of the county aforesaid, did, on or about the 26th day of October, A. D. 1876, at the county of Clay, did obtain from the said John V. B. Flack goods to the amount of $5 under false pretenses, the said John C. Estis giving an order to the said John Flack on John Williams for the same amount of $5.

These are, therefore, to command you to take the said John C. Estis, *alias* George Estis, if he be found in your county, and *you* safely keep, so that you have his body forthwith before me, or some other justice of the peace, to answer the said complaint, and be further dealt with according to law.

Given under my hand this 6th day of November, A. D. 1876.

JAS. P. WITHERS, Justice of the Peace.

Directed to the sheriff or any constable of said county, reciting therein the aforesaid accusation against the said John C. Estis, *alias* George Estis, and commanding the said sheriff or said constable forthwith to apprehend the said John C. Estis, *alias* George Estis, and bring him before the said justice to answer the premises, and further to be dealt with according to law ; which said warrant the said James P. Withers, justice of the peace, then and there delivered to Henry A. Lynn, who was then and there a ministerial officer, the constable of said Fishing River township, in said county of Clay, to be executed; and the said Henry A. Lynn, as such constable and ministerial officer, on the 20th day of January, A. D. 1879, proceeded to serve and execute the said warrant, and for that purpose went to the house of Mary Ann Estis, in said county, the said John C. Estis *alias* George Estis, then and there being in said house of the said Mary Ann Estis, and the doors of said house being then and there closed and fastened ; the said Henry A. Lynn, the said constable and ministerial officer, then and there publicly demanded to be admitted into the said

house of said Mary Ann Estis, and gave notice that he was the constable and had a warrant for the apprehension of the said John C. Estis, *alias* George Estis, and the said doors not being then and there opened, the said Henry A. Lynn, constable as aforesaid, did then and there forcibly open a door and was about to enter the said house of the said Mary Ann Estis to execute the said warrant and arrest the said John C. Estis, *alias* George Estis; and that John C. Estis and Anderson Estis then and there being within the said house and well knowing the premises aforesaid, unlawfully, forcibly, knowingly, willfully and feloniously did obstruct, resist and oppose the said Henry A. Lynn, the said constable and ministerial officer as aforesaid, in the service and execution, and in the attempt to serve and execute the said warrant and legal process, by then and there feloniously, on purpose and of their malice aforethought making an assault; and did then and there on purpose and of their malice aforethought feloniously shoot at him, the said Henry A. Lynn, the constable aforesaid, with certain pistols loaded with gunpowder and leaden balls, which they, the said John C. Estis and Anderson Estis, then and there held in their right hands; so the grand jurors aforesaid, upon their oaths aforesaid, do say that the said John C. Estis and Anderson Estis, in the manner aforesaid, unlawfully, knowingly, willfully and feloniously did obstruct, oppose and resist the execution of the legal process aforesaid, in the hands of the said Henry A. Lynn, constable and ministerial officer as aforesaid, in the service and execution, and in the attempt to serve and execute the warrant and legal process aforesaid, against the form of the statute in such case made and provided, and against the peace and dignity of the State.

The indictment is well enough, and is in substantial conformity with approved precedents. 2 Wharton Prac., (3 Ed.) 884; *State v. Cassady*, 52 N. H. 500. In neither of the authorities just cited do the indictments charge that the officer had in his

1. RESISTING LEGAL PROCESS: sufficiency of indictment.

possession the warrant for the arrest of the defendant, at the time such officer went to make such arrest. In the New Hampshire case, *supra,* the charge is of an assault upon one Samuel H. Legro, then and there being sheriff, &c., and " then and there being in the due and lawful execution of his said office, in the service of a warrant issued by Irving W. Drew, a justice of the peace," &c. And the precedent cited from Wharton contains no language such as counsel insists is necessary. It alleges the issuance of the warrant by the justice of the peace, and its delivery, by whom is not stated, to the constable, to be executed, and that " in obedience to the command of said warrant * * the said M. N., as such constable, * * did afterwards, &c., proceed to execute said warrant by," &c.

Nor is the objection to the indictment better taken, which urges its insufficiency because it does not charge the assault to have been made with a " deadly weapon." The indictment is based upon section 29, page 449, 1 Wag. Stat., as follows : " Every person who shall, on purpose and of malice aforethought, shoot at or stab another, or assault or beat another with a deadly weapon, or by any other means or force likely to produce death or great bodily harm, with intent to kill, maim, ravish or rob such person, or in the attempt to commit any burglary or other felony, or in resisting the execution of legal process, shall be punished by imprisonment in the penitentiary not exceeding ten years." Under this section we have held that the indictment having charged the defendant with willfully, feloniously, &c., shooting, &c., was sufficient; and the allegation of an assault was unnecessary. *State v. Phelan,* 65 Mo. 547. So that, so far as concerns the present prosecution, the indictment would follow the statute by charging that defendant did on purpose and of his malice aforethought, feloniously shoot at the officer in resisting the execution of legal process. This being the case, the allegation respecting the assault may be rejected as

surplusage, and still there will be left the charge that the constable was in the service and execution of legal process, and that the defendant, on purpose and of his malice aforethought, did then and there shoot at him, &c. *State v. Steeley*, 65 Mo. 218.

And there is no well founded objection to the indictment on the score of uncertainty as to the time the crimi-
3. ——: certainty nal act was done which caused the defend-
of charge as to
time.          ant's arrest; certainly not in view of certain statutory provisions cited on behalf of the State; provisions, many of which were not in existence at the time certain opinions were delivered, upon which defendant's counsel rely. This may be readily ascertained by comparing section 17, page 869, Revised Statutes 1845, with section 27, page 1176, Revised Statutes 1855, and section 27, page 1090, 2 Wagner's Statutes, and by examining the following decisions, based on section 27, *supra*: *State v. Stumbo*, 26 Mo. 306; *State v. Wilcoxen*, 38 Mo. 370; *State v. Edwards*, 60 Mo. 490, and cases cited.

The warrant under which the constable attempted the arrest of the accused. was in these words:

### STATE WARRANT—J. P.

STATE OF MISSOURI, } ss.     THE STATE OF MISSOURI
     County of Clay,
*To the Sheriff or any Constable of said County—Greeting :*

"Whereas, complaint has been made before me, one of the justices of the peace in and for the county afore-
4. INDICTMENT: ev- said, upon the oath of John V. B. Flake,
idence: variance that John C. Estes, *alias* George Estes, late of the county aforesaid, did, on or about the 26th day of October, A. D. 1876, at the county of Clay, did obtain from the said John V. B. Flake good to the amount of five dollars unde fales pretens, the said John C. Estes, giving an order to the said John Flake on John Mlliars for the same amount of Five Dollars.

These are, therefore, to command you to take the said

John C. Estes, *alias* George Estes, if he be found in your county, and you safely keep, so that you have his body forthwith before me, or some other justice of the peace, to answer the said complaint, and be further dealt with according to law.

Given under my hand this 6th day of November, A. D. 1876.

JAS. P. WITHERS, Justice of the Peace.

And it is contended that there is a fatal variance between the warrant set forth in the indictment and that adduced in evidence. The authorities cited on the part of the State, however, show this position to be erroneous, the rule being that even where an instrument is alleged as set forth according to its tenor, a mere literal variance between the instrument offered in evidence and that described, will not vitiate the indictment. 2 Russ. on Crim., 800. Thus, "undertook" for understood, "promise" for promised, "Mess" for Messrs., were held not material, and the indictments sufficient. For these reasons we hold as immaterial that the warrant does not literally conform to that contained in the indictment; regarding it as altogether a work of supererogation for the draftsman of an indictment to sedulously imitate the misspelling of the ignorant. It is quite evident, too, that no one could possibly mistake the meaning of the words " unde fales pretens."

And, aside from the common law authorities, our statute, section 22, 2 Wag. Stat., p. 1089, was expressly designed to meet a case of this kind. As we have had occasion before to remark, under that section no variance between the statement in any indictment, and the evidence offered in proof thereof, " in the name or description of any matter or thing whatsoever named or described therein," is to be deemed ground for an acquittal, unless the trial court finds such variance material, &c. *State v. Wammack, ante,* p. 410.

As from the precedents cited, it was unneccessary to allege that the warrant was delivered to the constable by

5. RESISTING AR-
REST: evidence. any particular person, so if alleged, it was not necessary to prove it. If the warrant was properly issued, and of this there seems no doubt, it made no matter through what agency it reached the officer's hands. What is immaterial need not be alleged, and if alleged, need not be proved. Section 27, *supra*, prevents any indictment from being vitiated by any "surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged."

It is, we think, fairly inferable from the testimony, that the warrant was in the possession of the officer at the time he met with resistance; because he says, respecting the warrant: "I had received it before I went to make the arrest on the 20th day of January, 1879." This statement, coupled with his testimony, as well as that of other witnesses, that he proclaimed to the defendant that he was the constable, and had a writ for him, was sufficient to go to the jury as evidence that the officer possessed at the time the requisite legal authority.

We discover no error in the rejection of testimony that threats had been made against defendant by certain
6. —— evidence. persons in Clay county, to the effect that they were looking for him, and when they found him, would never take him before a justice of the peace for trial, but would kill him. It would give a singular immunity to criminals if the threats of unauthorized persons should be allowed as grounds for depriving the officers of the law of their customary authority. Besides, the evidence distinctly shows that neither the officer, nor those with him, had ever indulged in any threats, and the conduct of the defendant, for which this prosecution was instituted, appears not to have originated in fear of personal violence, for the warrant had been issued for three years before the arrest was made, and defendant continued to live in the same community during all that time; but seems to have been solely the result of a spirit of dogged defiance of, and resistance to, the law and those charged with its enforcement.

The instructions given on the part of the State fairly presented the law applicable to the case, to the jury, and this consideration renders the discussion of those asked by defendant unnecessary.

There was nothing in the remark of the prosecuting attorney which could have operated to the injury of the defendant, and, therefore it is no ground for reversal. The judgment is affirmed. All concur.

8. CRIMINAL PRACTICE: remarks of prosecuting attorney.