# THE STATE v. FRANK STOKES, Appellant.

### Division Two, June 23, 1921.

1. **DEFENDANT AS WITNESS**: Interpretation of Statute. It is difficult to lay down any positive rule which will apply in the interpretation of the statute (Sec. 4036, R. S. 1919) declaring that the defendant in a criminal case shall be liable to cross-examination as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case. Its application must be determined in each case by its own facts. .

2. ———: Cross-Examination: Immaterial Matters. The cross-examination of a defendant concerning matters which are not material to any issue in the case and whereby he is not injured is not reversible error.

3. ———: ———: Seduction: Movements. Where defendant had testified that he had at one time before the alleged promise of marriage found prosecutrix and another young man lying on a pallet, in her parents' home, during their absence, at three o'clock in the afternoon, the trial court did not err in requiring him to testify on cross-examination that he thereafter frequently visited her and that she asked him to marry her.

4. ———: ———: Conviction of Other Crimes. On the trial of a defendant charged with seduction it is not error, in view of the language of Section 5439, Revised Statutes 1919, to compel him to testify whether or not he was convicted when about fourteen years of age for stealing watermelons, that he was convicted of carrying a pistol, and that he was convicted for fighting. [Distinguishing State v. Beckner, 194 Mo. 281.]

5. ———: ———: ———: Instruction. It is not the duty of the court to instruct the jury that they can consider the evidence of defendant's former conviction of other crimes, admitted as evidence tending to affect his credibility as a witness, only for the purpose of discrediting his testimony and not as tending to prove his guilt of the crime for which he is being tried, where defendant neither offers nor requests an instruction on the subject.

6. **INDICTMENT**: Wrong Name. An indictment which twice names the defendant as "Frank Stokes" and once as "Frank Slokes," where Frank Stokes was arraigned and entered his plea as the real defendant, made no attack upon the indictment before or

during the trial and made no objection to the introduction of evidence on the ground that there was a variance between his name and that of "Slokes" once mentioned in the body of the indictment, and the trial court did not find that the alleged variance was material to the merits of the case or prejudicial to the defense of defendant, is, under the statute (Secs. 3906 and 3907, R. S. 1919), sufficient to sustain a conviction of Frank Stokes charged with a felony.

7. **PRACTICE: Reopening Case: Seduction: Proof of Unmarried State.** Where there was nothing in the testimony to indicate that prosecutrix, in the trial of defendant for seducing as unmarried female under promise of marriage, had ever been married, but the testimony of all the witnesses left the impression that she was unmarried, it was not error to permit the State, after the case was closed and counsel for plaintiff had begun the argument to the jury, to prove that prosecutrix was single at the time of the alleged seduction and that she had never been married.

8. **EVIDENCE: Seduction: Keeping Company With Other Boys.** It was not error in the seduction case to refuse to permit a witness for the State, who had testified that the reputation of the prosecutrix for chastity and virtue was good, to further testify whether he had heard of her keeping company with other boys, the testimony showing that she had kept company with other boys prior to defendant's alleged promise to marry her and the question as asked referring to that time as well as to subsequent time.

9. **ARGUMENT TO JURY: Not Preserved.** Alleged improper remarks made by counsel for the State in his argument to the jury, which were not objected to, were not made a matter of record and are not contained in the transcript, cannot be considered on appeal.

10. **INDICTMENT: Indorsement by Foreman: Wrong Name.** The panel of grand jurors contained the name of Rufus Moore, and the name Moore no where else appears therein. The indictment was indorsed by "R. L. Moore, foreman," as a true bill. No motion to quash it was filed, nor was any objection to its sufficiency made during the trial. *Held*, that it will be presumed that the trial court did its duty, as the statute requires, and found that Rufus Moore and R. L. Moore were one and the same person.

11. **VERDICT: Signed by Wrong Person.** Where the list of jurors who tried the case contains the name of Arthur Paxton and the name Paxton no where else appears in the list, and no evidence appears to the contrary, it will be presumed that Arthur Paxton and A. A. Paxton are one and the same person, and that a verdict signed by "A. A. Paxton, foreman" is not defective.

Appeal from Hickory Circuit Court.—*Hon. C. H. Skinker,* Judge.

AFFIRMED.

*W. A. Dollarhide* and *J. D. Harris* for appellant.

(1) It is the well settled law that the defendant in a criminal trial cannot be cross-examined upon matters not referred to in his examination in chief. State v. Pfeifer, 267 Mo. 30; State v. Kyle, 177 Mo. 659; State v. Grant, 144 Mo. 63; State v. Hathhorn, 166 Mo. 239; State v. Swearengin, 269 Mo. 185; State v. Drew, 213 S. W. 106; Sec. 5238, R. S. 1909; U. S. Constitution, 5th Amendment; State v. Bowman, 272 Mo. 500; State v. Goodwin, 271 Mo. 73; Art. II. sec. 23, Constitution of Missouri. The above rule was flagrantly violated and the above decisions entirely overlooked and ignored in the cross-examination of the defendant in this case. (2) Reversible error was committed by the court in permitting the State to attack the defendant's general moral character on his cross-examination, over the defendant's objection and exception, as to offenses and conduct of the defendant which would not bear upon his credibility as a witness, the defendant himself not having opened up this issue by offer of proof of his good reputation on the traits of character involved in the improper cross-examination. State v. Beckner, 194 Mo. 293. Not one of these offenses reflected in any way upon the defendant's reputation in his capacity as a witness. In his capacity as defendant he was protected from an inquiry as to these items by the State, not having himself opened up the subject by offering proof in regard thereto. State v. Nelson, 101 Mo. 464; State v. Smith, 125 Mo. 7; Kitteringham v. Dance, 580 Iowa, 634; State v. Shuster, 263 Mo. 600; State v. Wellman, 253 Mo. 314;

State v. Horton, 247 Mo. 657. But even if the evidence objected to in the preceding point were admissible, then it became and was the duty of the court under the law and under the request of defendant's counsel to instruct the jury to the effect that the jury could only consider his conviction on those other offenses as tending to discredit his testimony as a witness, and not as tending to prove him guilty of the crime for which he was then on trial. But this the court did not do, having failed to give any instruction on the subject. State v. Goode, 220 S. W. 854; State v. Wellman, 253 Mo. 318. (3) The indictment is fatally defective, in that it charges that one "Frank Stokes" did seduce and debauch one Chloe Durnell upon a promise of marriage made to her by Frank Stokes. State v. Stephens, 199 Mo. 261; State v. Manning, 168 Mo. 418; State v. Edwards, 70 Mo. 480; Kinney v. State, 21 Tex. 348, 17 S. W. 423; Davis v. State, 60 Tex. Cr. R. 108, 131 S. W. 315; State v. Martin, 10 Mo. 391; State v. Mitchell, 25 Mo. 420; State v. Clinkenbeard, 135 Mo. App. 189. Nor is the name Slokes *idem sonans* with the name Stokes. The following names have been held not to be *idem sonans*: "Whelan" and "Wheler," Whelan v. Weaver, 93 Mo. 430; "Miller" and "Millen," Chamberlain v. Blodgett, 96 Mo. 482; "Grat" and "Goltz," State v. Brown, 119 Mo. 527; "Graton" and "Grafton," Grafton v. Holiday-Klotz Land & Lumber Company, 189 Mo. 322; "Emma Burge" and "Emily Burge," Burge v. Burge, 94 Mo. App. 15; "Mathews" and "Mather," Robson v. Thomas, 55 Mo. 581; "Mohr" and "Moores," State v. Mohr, 55 Mo. App. 325. (4) The sufficiency of an indictment may be raised by motion in arrest, and in this instance it was raised both by motion for new trial and in arrest. State v. Patterson, 159 Mo. 98; State v. Clark, 223 Mo. 51. The defect in the indictment may even be raised for the first time in this court. State v. Clark, 223 Mo. 51. It has been the uniform ruling of this court that in indictments nothing material may be taken by intendment or impli-

cation. State v. Patterson, 159 Mo. 101; State v. Clark, 223 Mo. 52. (5) The evidence wholly fails to make out a case of seduction. It is not enough that the State show that the female was debauched under a promise of marriage, but in addition thereto there must be the further showing that the woman was deceived and drawn aside from the path of virtue, her affections gained and her mind polluted by arts and blandishments upon the part of the defendant. "Every illicit connection is not seduction." State v. Reeves, 97 Mo. 675; State v. Mitchell, 299 Mo. 698. (6) The court committed reversible error in permitting the State to re-open the case after the State had closed its case and after the defendant had closed his defense, and after the court had submitted the case to the jury on the instructions, and after the prosecuting attorney had commenced his argument on behalf of the State, and after all the witnesses had been excused, by permitting the State to recall the prosecutrix, Chloe Durnell, and prove by her that she was single and unmarried at the time alleged in the indictment, all of which was done over the objection and exception of the defendant and at a time when it was highly prejudicial to the defendant. The defendant had no way at that stage of the proceeding to rebut the proof offered by the State. Sec. 4478, R. S. 1909; State v. Wheeler, 108 Mo. 658. (7) The third instruction given by the court is clearly insufficient, and inadequate to present the issue of corroboration to the jury, and is, in fact, misleading. This instruction told the jury that her testimony as to the promise of marriage may be corroborated "by the continuous courtship for such a period of time as in the course of ordinary affairs an engagement of marriage," would be presumed to exist. It assumes that there was such continuous courtship, when this was a controverted issue and fails to define the kind of courtship which will be sufficiently corroborative to justify the jury in finding a promise of marriage. State v. Wheeler, 108 Mo, 665.

*Jesse W. Barrett,* Attorney-General, *Robert J. Smith* and *R. W. Otto,* Assistant Attorneys-General, for respondent.

(1) Defendant was not subjected to improper cross-examination. (a) The State may cross-examine a defendant upon any matter gone into in his examination in chief. State v. Mitchell, 229 Mo. 693; State v. Ivey, 192 S. W. 737; State v. Drew, 213 S. W. 106. (b) Conviction of other crimes may be proven by the defendant's evidence on cross-examination. R. S. 1919, sec. 4036; Kelly's Criminal Law and Practice, sec. 375; State v. Spivey, 191 Mo. 110; State v. Blitz, 171 Mo. 539; State v. Hubbard, 223 Mo. 85; State v. Brooks, 202 Mo. 117. (c) An objection to the introduction of testimony where no sufficient reason is stated will not be reviewed on appeal. State v. Harris, 199 Mo. 723; State v. Young, 153 Mo. 449. (2) The court did not err in failing on its own motion to instruct the jury that the evidence of other crimes was admitted for the purpose of discrediting the testimony of defendant as a witness. State v. Kilgore, 70 Mo. 558; State v. Gatlin, 170 Mo. 354; State v. Ferguson, 162 Mo. 678. (a) This question is not before this court for the reason that the record fails to show that the defendant offered or requested such instruction and fails to show that the defendant excepted at the time to the failure of the trial court to so instruct. State v. Pfeifer, 267 Mo. 29; State v. Goldsby, 215 Mo. 57; State v. George, 214 Mo. 262; State v. Epenschied, 212 Mo. 222; State v. Barnett, 203 Mo. 658. (3) Mere clerical errors in indictment did not vitiate it. It has often been held that the mis-spelling of a word is not sufficient ground for quashing the indictment. State v. Vaughan, 141 Mo. 514; State v. Craighead, 32 Mo. 561. Spelling the name "Slokes" is a mere clerical error and did not in any way prejudice the defendant and is not reversible. State v. Griffin, 249 Mo. 624; State v. Morehead, 271 Mo. 84. If the defendant be indicted

in the wrong name unless he declare his true name before pleading, he shall be proceeded against by the name
in the indictment.    Sec. 3906, R. S. 1919; State v.
Schricker, 29 Mo. 265.    Purely technical objections in
cases of this kind are cured by our statutes and variances in the name of the defendant shall not be deemed
grounds for an acquittal unless the court before which
the trial is had, shall find that such variance is material
to the merits of the case and prejudicial to the defense
of the defendant.   Sec. 3907, R. S. 1919; State v. Johnson, 93 Mo. 77; State v. Foley, 247 Mo. 607; State v.
Ballard, 104 Mo. 634; State v. Burk, 151 Mo. App. 198.
(4) The evidence is sufficient to sustain the verdict. The
reiterated rule is that there must be a total failure of
the evidence or it must be so weak as to justify the
conclusion that the verdict was the result of passion
or prejudice.   State v. Underwood, 263 Mo. 685; State
.v. Concelia, 250 Mo. 424; State v. Rumfelt, 228 Mo. 443.
(5)    The court did not commit error in permitting the
case to be reopened.   The reopening of the case by the
state for the introduction of evidence was a matter within the discretion of the trial court.   It is well settled
law that such a course is not subject to criticism unless it be shown that injury to the defendant resulted
therefrom.    State v. Rose, 271 Mo. 26; State v. Long,
257 Mo. 211; State v. Currier, 225 Mo. 651; State v. Ray,
225 S. W. 973; State v. Dunn, 179 Mo. 118.   (6)   There
was sufficient corroborative evidence.   State v. Long,
257 Mo. 207; State v. Phillips, 185 Mo. 185; State v.
Sublett, 191 Mo. 163.   The instruction given in corroboration was proper.   State v. Wheeler, 108 Mo. 665;
State v. Meals, 184 Mo. 244.

RAILEY, C.—On November 19, 1919, the grand
jury of Hickory County, Missouri, returned into the
circuit court of said county an indictment, charging
therein that Frank Stokes, on or about the 15th of November, 1918, under a promise of marriage, did felon-

288 Mo.—35

iously seduce and debauch Chloe Durnell, an unmarried female of good repute, and under twenty-one years of age, against the peace and dignity of the State.

On April 20, 1920, defendant Stokes waived formal arraignment under the indictment, pleaded not guilty, and entered upon a trial of said cause before a jury.

The testimony of prosecutrix, Chloe Durnell, in substance, tends to show the following facts: That she was born in Hickory County, Missouri, on August 9, 1899; that she had lived four miles north of Flemington in said county all her life; that she had known defendant, Frank Stokes, since she could first remember; that she commenced going with him in August, 1918; that defendant lived about two and one-half miles away, and came to see her about two or three times a week; that she went to parties and to church with him; that while at her sister's in November, 1918, she and defendant were engaged to be married; that afterwards she and defendant continued to attend church and parties; that about one week after they became engaged, defendant had sexual intercourse with her, near the chapel in said county, after night; that defendant was the father of her child; that he had sexual intercourse with her a few times at other places; that he continued to visit her until February, 1919; that the wedding was first set for December 24, 1918; that she was getting her quilts and things ready, making her clothes, etc.; that she got caught before the above date, and did not marry then; that by the 24th of December, 1918, she found out she was in a family way; that she did not marry in December because she could not get ready; that on July 11, 1919, defendant gave her $15 and sent her to Kansas City, to try and get rid of the baby; that she wrote defendant a letter upon her return from Kansas City, where she spent one night, and asked him to marry her, which he declined to do; that in the latter part of November, 1918, while close to the chapel, defendant wanted to have intercourse with her, said he would be her husband, and could not wait until

they were married; that he had been hugging and kissing her before that time. Over the objection of defendant, she was permitted to testify that she would not have yielded to defendant's entreaties and had intercourse with him had it not been for his promise to marry her.

On cross-examination, she testified, in substance, that she had never gone with Frank Stokes before August, 1918; that she had been keeping company with other boys, but Fred Wise was the only one before she commenced going with defendant; that after August, 1918, Fred Wise was the only other boy she went with; that she went with Frank Stokes, the first of August and then with Fred Wise; that the wedding was first set for December, but they became engaged November 25, 1918; that defendant first had sexual intercourse with her about one week after November 25, 1918, and after they were engaged; that defendant asked her to marry him; that defendant bought her a dress in December, 1918; that they did not marry then, because she could not get ready; that she first found out she was in a family way on January 20, 1919; that she told defendant about it; that the second date for their marriage was February 20, 1919; that defendant then quit her, about February 15, 1919; that he never went with her any more until May, 1919; that she had a talk with defendant near Marcus Miller's, after she returned from Kansas City in July, 1919; that her baby was born, October 25, 1919; that she had never had intercourse with any other boy.

Defendant's exhibit 1, dated at Humansville, Missouri, August 8, 1917, addressed to Earl Stokes, purporting to be signed "From C. E. to E. S.", was presented to prosecutrix, and she was asked if she wrote the letter. She testified that she never wrote the letter, and it was not in her handwriting.

James Miller testified, in substance, that he was the brother-in-law of prosecutrix; that he knew defendant Stokes; that the latter came to see prosecutrix about once a week, and took her to church and parties; that

he heard them talk about getting married and about what they would do after they were married; that defendant said they would live on the old place for a year and then they would move to his place; that he (witness) gave prosecutrix a hog, and told her she could let it run there until they married; that defendant was present and heard the talk about the hog; that she went to work getting her clothes together, quilting, etc.; that they first talked about getting married about Christmas, but she could not get ready by that time, and they put it off until February; that witness and defendant are own cousins.

On cross-examination, the testimony of witness was practically the same as in chief. He denied making any arrangements with prosecutrix to remain at his home and not get married. Denied that he agreed to give her a mare and some other property if she would remain with witness and his wife.

On re-examination, witness testified that defendant told him he had given prosecutrix some money to go to Kansas City to see if she could get rid of the baby.

Mrs. Dona Miller testified to substantially the same facts as did her husband.

Fred Wise testified, in substance, that he had known prosecutrix about three years. He was asked if he was acquainted with the general reputation of prosecutrix in that community for virtue and chastity, as being a virtuous and moral woman. Defendant's counsel objected to the question, on the ground that witness was only acquainted with a few people in the community and the objection was sustained.

Tim Stokes, a cousin of defendant, testified that he had known prosecutrix about all his life (He was 21 years old); that they went to school together; that she and defendant went to gatherings together. He heard defendant say, he did not know whether the baby was his (defendant's) or not. Witness testified that, so far as he knew, prosecutrix's reputation for virtue and chastity in that community was good.

Tim Stokes was recalled for further cross-examination and denied that he told defendant in August, 1918, he had had sexual intercourse with prosecutrix.

Chloe Burnell, prosecutrix, was recalled for further cross-examination, and denied that she told Oleeda Shockley, in the fall of 1918, if she ever got married she wouldn't have any children, as she knew how to get rid of them.

The State introduced ten witnesses who testified as to the good reputation of prosecutrix for virtue, chastity, etc.

The foregoing covered substantially the State's case in chief.

Fred McCracken testified that in the fall of 1918, he met Ray Bernard and prosecutrix in the road; that Bernard had his arm around her and was hugging her as they were walking down the road together. It was daylight at the time.

Henry McCracken testified, in substance, the same as the preceding witness, except that he fixed the date when Ray Bernard and prosecutrix were walking together, as being in March, 1919.

Cuba Beem, fifteen years of age, testified that she was defendant's niece; that she had known prosecutrix two or three years and had a conversation with her in the fall of 1918; that in this conversation prosecutrix told witness that Jim Miller had promised her, if she would never marry, stay there and work for himself and wife, that he would give her a team of colts and some other property; and that she had accepted his proposition; that this conversation occurred at Jim Miller's, in the cow lot, on November 12, 1918.

Oleeda Shockley testified that she was nineteen years of age, had known prosecutrix all her life, and in the fall of 1918 heard her say, if she ever got married, she wouldn't have any children; that she knew how to keep from having them, and had tried it.

Earl Stokes, a cousin of defendant, testified that he went to school with prosecutrix and knew her handwriting; that he received a letter from her, described as defendant's exhibit 1; that he had quit school, and his sister Mamie gave it to him; that he talked with prosecutrix after receiving this letter, and she wanted to know why he didn't answer it or come to the chapel as she had told him. Witness further testified that prosecutrix, in August or September, 1918, told him she had had intercourse with Burr Ousley, Glenn Jones, Tim Stokes and Fred Wise; that this occurred on the road from Flemington while she was staying at Mr. Shreck's.

Defendant's exhibit 1 was read in evidence, as follows:

"Humansville, Mo., Aug. 8, 1917.
"To Earl Stokes:
"Hello Earl how are you. I am all O. K. I hope these few lines will find you the same. What have you been doing this week I have wash and iron and went over to Willie and stade all night and I come home and clean up the house and I had to help Cleae hall a lode of corn and I went to sleep a while and then I went back to work again say kid you get Home all rite a Sunday evening. How you pass a Monday night did you see me say Earl I waunt you to make your mine up by next Wenday night if you will do what I want you to do say some one said if they was me and you they wood marry and I will if you will and they sad we cod sell out and go away from home that they wood her from us for a mont. I want do what I told you I wood I wood let you sleep with me. Ethel said that she wood help to put me in a bed by herself let me know next Wenday night if we dont do that I am go do sumten else come down and I will give you a big kiss and a hug. Well I will send this by Montie to school and Montie will give it to Mama. You ancer and send it by Mama.
"From C. E. to E. S."

Frank Stokes, the defendant, testified in substance as follows: That he was twenty-six years old; that he never promised to marry Chloe Durnell; that he never had any conversation with her in the presence of either Jim Miller or his wife, in regard to marriage or about getting married; that he knew Ray Bernard; that Bernard and prosecutrix stayed at Mr. and Mrs. Durnell's while the Durnells had gone to Sedalia; that he saw Bernard and prosecutrix lying on the floor on a pallet when he drove up; that when they saw defendant, they jumped up; that witness said, "Who was that?" and Chloe said, "You ought not come so quick;" that was in August, 1918.

On cross-examination, defendant testified that he saw them lying on the pallet about three o'clock in the afternoon; that they had two pillows and a quilt down there; that he did not know what they were doing. Over the objection of defendant's counsel, he was required to testify that he had gone with the prosecutrix before and after this occurrence; that he would go to see her on Sundays and sometimes go once a week; that sometimes he would stay until three o'clock while they were by themselves; that he went to see Chloe the next Sunday after he saw her with Bernard lying on the pallet; that he went back again to see her in about two or three weeks; that he would go once a week and sometimes once through the middle of the week; that she locked the door and he would have to stay until she let him out; that she would keep him in there; that he never talked at Miller's about marrying this girl; that he never talked to her about marrying her, but she talked to him; that he told her he didn't want to get married; that the last time she asked him to marry her was in August, 1919. Over his objection, defendant was compelled to testify that he had been convicted once or twice for violating the laws of the State; that he was convicted when about fourteen years old for stealing watermelons; that he was convicted for carrying a pistol, and that he was convicted for fighting.

Defendant here rested in chief.

In rebuttal, the State called William Durnell, who gave evidence tending to show that Ray Bernard was in the army at the time defendant claims to have seen him on the pallet with Chloe.

Louisa Durnell, the mother of prosecutrix, was shown defendant's exhibit 1, and stated that it was positively not in her daughter's handwriting.

Wm. Durnell, the brother of prosecutrix, testified that he went to school with her and observed her handwriting. He was shown said exhibit 1, and testified that it was not in the handwriting of prosecutrix.

After the case was closed and counsel for the plaintiff had commenced the argument, the State was permitted, over the objection of defendant, to prove by the prosecutrix that she was single during the years 1918 and 1919; and that she had never been married.

The foregoing substantially covers all the testimony in the case.

After the reading of the instructions and the arguments in the case, the jury returned into court the following verdict:

"We, the jury, find the defendant, Frank Stokes, guilty as charged in the indictment, and assess his punishment at 3 years in state penitentiary.

"A. A. Paxton, Foreman."

Defendant, in due time, filed motions for a new trial and in arrest of judgment. Both motions were overruled, defendant duly sentenced, and an appeal was granted him to this court.

I. Appellant assigns as error the ruling of the court in permitting the State, over his objection, to cross-examine him in respect to matters not brought out or referred to by him, in his direct examination.

Cross-Examination of Defendant.

The language of Section 4036, Revised Statutes 1919, which it is alleged was violated, is, that a defend-

ant, ''shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case.'' We are thoroughly familiar with the above section of our statute, as well as the authorities cited by counsel in their respective briefs. It is difficult to lay down any positive rule which should apply in the interpretation of the above section, as each case must largely be determined with reference to the facts stated therein. We have set out all the evidence in the case very fully, and shall only refer to the facts again as far as necessary.

It is conceded by appellant that he testified, in chief, that he never promised to marry Chloe Durnell; that he never had any conversation with her, in the presence of either Jim Miller or Mrs. Jim Miller, in which he talked about when he would get married and about getting married; that he saw Chloe Durnell and Ray Bernard lying on a pallet with two pillows and a quilt, at the home of Will Durnell, in August, 1918, while Will Durnell and his wife were at the Sedalia fair. Over the objection of defendant's counsel, he was required to testify that he went with prosecutrix both before and after the time he saw her on the pallet with Bernard. Over defendant's objection, he testified that he visited prosecutrix frequently after the above occurrence; would go on Sundays, and sometimes once in the middle of the week; that he would stay with her sometimes until two or three o'clock in the morning; that she would lock the door and keep him there; that he never proposed marriage to her, but she asked him to marry her and he told her he did not want to marry, etc. For the purposes of the case, even if it be conceded that the above and other similar testimony was not proper cross-examination, yet, we are at a loss to understand how defendant was injured thereby. The evidence is undisputed that he went with prosecutrix to church, parties, etc. The cross-examination threw no light on the ques-

tion as to whether defendant promised prosecutrix he would marry her. It did not tend to show that Chloe Durnell was of previous good character. In view of the testimony of the prosecutrix as to what occurred between herself and defendant, the cross-examination complained of was not material to any issue in the case, and affords no valid grounds for reversing and remanding the cause. [State v. Avery, 113 Mo. l. c. 499; State v. Lewis, 118 Mo. l. c. 86; State v. Feeley, 194 Mo. l. c. 315-6; State v. Barrington, 198 Mo. l. c. 81.]

II. Aside from what is said in the preceding proposition, we are of the opinion that the trial court committed no error in the admission of said cross-examination, in view of defendant's testimony in chief. [State v. Drew, 213 S. W. l. c. 107; State v. Sherman, 264 Mo. l. c. 381; State v. Mitchell, 229 Mo. l. c. 693; State v. Miller, 190 Mo. l. c. 463-4; State v. Avery, 113 Mo. l. c. 498-9.] The rule of law, in respect to foregoing subject, is very forcefully and clearly stated by WHITE, C., in the recent case of State v. Drew, 213 S. W. l. c. 107, as follows:

*Proper Cross-Examination.*

"Complaint is made of the action of the court in permitting the defendant to be cross-examined by the prosecutor, who asked him whether he was at the home of the prosecuting witness at any time in October. The defendant in his direct examination was asked whether he had ever had any improper relations with the prosecuting witness at any time, and it was entirely proper to cross-examine him as to his whereabouts and his movements about the time at which he was said to have committed the offense. [State v. Pfeifer, 267 Mo. 23, loc. cit. 30-32, 183 S. W. 337; State v. Ivy, 192 S. W. 733, loc. cit. 736.]"

Leaving out of consideration the question as to the alleged promise of marriage, and as to what is alleged to have taken place when defendant first had sexual in-

tercourse with prosecutrix, there is but little conflict, if any, in their testimony. As defendant testified in chief, in relation to the promise of marriage, and was not asked on cross-examination as to whether he had sexual intercourse with Chloe Durnell, he has no just ground of complaint on account of the evidence which he did give on cross-examination. Considered from any viewpoint, we are of the opinion that the trial court committed no error in respect to the cross-examination of defendant.

III. Appellant contends that the trial court erred in compelling him to testify as to his former convictions for stealing watermelons when a boy, for carrying a pistol, and for fighting, when he had not opened up any such issue by offer of proof as to his good reputation on the traits of character involved in said cross-examination. Appellant, in support of his contention, relies upon Judge GANTT's opinion in State v. Beckner, 194 Mo. 281 and following.

Conviction:
Cross-Examination.

We have no criticism to make of Judge GANTT's opinion, based upon common-law principles, but it is evident from the briefs of counsel in said cause, as well as from the opinion therein, that the attention of the court was not called to the Act of 1895 (Laws 1895, p. 284), now known as Section 5439, Revised Statutes 1919, nor was the latter considered by the court in passing on the case. The above section reads as follows:

"Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry and the party cross-examining shall not be concluded by his answer."

We are of the opinion that the cross-examination complained of was authorized by the provisions of above section. [State v. Howe, 228 S. W. 1. c. 479, and cases

cited; State v. Mills, 272 Mo. l. c. 536; State v. Banks, 258 Mo. l. c. 493; State v. Hubbard, 223 Mo. 80; State v. Woodward, 191 Mo. l. c. 633; State v. Spivey, 191 Mo. l. c. 110-1; State v. Blitz, 171 Mo. l. c. 540-1-2.]

IV. Appellant, under his assignments of error numbered 3, insists that, even if the testimony, in regard to the former misdemeanors, was properly shown, "then

Instruction. it became and was the duty of the court under the law and under the request of defendant's counsel to instruct the jury to the effect that the jury could only consider his conviction on those other offenses as tending to discredit his testimony as a witness, and not as tending to prove him guilty of the crime for which he was then on trial."

The record indicates that defendant was represented by able and careful attorneys, who tried the case well in his behalf. The court gave very full and carefully prepared instructions covering all the real issues in the case. The defendant offered no instruction in respect to foregoing matter, nor does the record show that the court was requested to instruct the jury on the above subject. The misdemeanors referred to were only admitted as evidence tending to affect the credibility of defendant as a witness in the case. They did not relate to the merits of the controversy except as above indicated. If counsel for appellant had offered an instruction in relation to the above matter and it had been refused, or if they had requested the court to give a proper instruction on that subject and their request had been refused, there might be some merit to their present contention, but on the record before us, the trial court, in respect to the above matter, committed no error of which appellant can legally complain.

V. The sufficiency of the indictment is challenged, on the ground that it charges one Frank

Indictment. "*Stokes*" with seducing and debauching Chloe Durnell, upon a promise of marriage made to her by Frank Stokes.

Sections 3906-7, Revised Statutes 1919, which were in existence during the year 1918, read as follows:

"Sec. 3906. *Indictment by wrong name.*—If a defendant be indicted by the wrong name, unless he declare his true name before pleading, he shall be proceeded against by the name in the indictment. If he allege that another name is his true name, it must be entered in the minutes of the court; and after such entry, the trial and all other proceedings on the indictment shall be had against him by that name, referring also to the name by which he is indicted, in the same manner, in all respects, and with the same consequences as if he had been indicted by his true name.

"Sec. 3907. *Variance between charge and proof.*— Whenever on the trial of any felony or misdemeanor, there shall appear to be any variance between the statement in the indictment or information and the evidence offered in proof thereof, in the Christian name or surname, or both Christian name and surname, or other description whatsoever, or any person whomsoever therein named or described, or in the name or description of any matter or thing whatsoever therein named or described, or in the ownership of any property named or described therein, such variance shall not be deemed grounds for an acquittal of the defendant, unless the court before which the trial shall be had shall find that such variance is material to the merits of the case and prejudicial to the defense of the defendant.''

The indictment aforesaid, including caption and signature, reads as follows:

"STATE OF MISSOURI, COUNTY OF HICKORY, } IN THE CIRCUIT COURT OF HICKORY COUNTY, ss MISSOURI, To November Term, 1919

STATE OF MISSOURI v. FRANK STOKES

"The Grand Jurors for the State of Missouri, duly summoned, empaneled, charged and sworn to inquire

within and for the body of Hickory County, Missouri, upon their oaths present and charge that Frank *Slokes* on or about the 15th day of November, 1918, at the said County of Hickory, and State aforesaid, did then and there under and by promise of marriage made to one Chloe Durnell by him, the said Frank Stokes, unlawfully and feloniously, seduce and debauch her, the said Chioe Durnell, she, the said Chioe Durnell being then and there an unmarried female of good repute, and under twenty-one years of age against the peace and dignity of the State.

"C. N. Simmons,
"Prosecuting Attorney."

Taking the indictment as a whole, it is perfectly manifest upon the face of same, that the word "Slokes" in the body thereof was intended for Stokes. The latter was arraigned and entered a plea of not guilty, as the real defendant in the case. He made no attack upon the indictment before or during the trial, and made no objection during the progress of the trial to the introduction of evidence under the indictment on the ground that there was a variance between his name and that of "Slokes" mentioned in the body of the indictment. It is not claimed that the trial court found the alleged variance was material to the merits of the case or prejudicial to the defense of defendant. The indictment, on its face, construed as any other written instrument, clearly indicates that Frank Stokes was ·the real defendant being charged with seducing Chloe Durnell and that the word "Slokes" was intended for Stokes. The clerical error of the above character, according to our conception of the law and legal procedure thereunder, is not sufficient to invalidate the indictment. [Section 3908, R. S. 1919; Section 5115, R. S. 1909; State v. Adkins, 225 S. W. 981; State v. Foster, 220 S. W. 958-9; State v. Hawkins, 210 S. W. l. c. 6; State v. Byrd, 278 Mo. l. c. 432-3, 213 S. W. l. c. 36; State v. Pfeiffer, 277 Mo. l. c. 206, 209 S. W. 925; State v. Massey, 274 Mo. l. c. 585,

204 S. W. 541; State v. Morehead, 271 Mo. 1. c. 87, 195 S. W. 1043; State v. Perrigin, 258 Mo. 1. c. 236; State v. Griffin, 249 Mo. 624; State v. Duvenick, 237 Mo. 1. c. 194; State v. Keener, 225 Mo. 1. c. 494; State v. Miller, 156 Mo. 1. c. 84; State v. Meyers, 99 Mo. 107; State v. Estis, 70 Mo. 437.]

In the light of foregoing precedents and statutes, we are of the opinion that the indictment charges Frank Stokes, with having seduced Chloe Durnell under a promise of marriage, etc.

VI. Appellant insists that the evidence was insufficient to make out a case of seduction.

The facts are extensively stated heretofore, and need not be repeated. While there are some inconsistencies and contradictions in the testimony of the State, and while some damaging facts were not in *terms* denied by prosecutrix, yet she did testify on cross-examination that no other boy had ever had intercourse with her. It is not the province of this court to pass upon the *weight* of the evidence, and we have not attempted to do so. We are of the opinion that the verdict is sustained by *substantial* evidence as to all the facts necessary to establish the guilt of defendant. [State v. Underwood, 263 Mo. 1. c. 685; State v. Concelia, 250 Mo. 1. c. 424; State v. Rumfelt, 228 Mo. 443; State v. Barrington, 198 Mo. 23.]

*Sufficient Evidence.*

VII. The trial court is charged with error in permitting the State, after the testimony was closed and the argument commenced, to re-open the case by permitting the prosecutrix to testify that she had never been married.

*Reopening Case.*

There was nothing in the testimony to indicate that prosecutrix had ever been married. On the contrary, the testimony of all the witnesses, including defendant, left the impression that she was unmarried. It is manifest that no harm was done the defendant in re-opening the case for the above purpose. [State v. Ray, 225 S. W. 1. c.

973; State v. Rose, 271 Mo. l. c. 26; State v. Dunn, Mo. l. c. 118; State v. Worton, 139 Mo. l. c. 533.]

VIII. We are of the opinion that instruction three, given by the court, is not obnoxious to the criticism leveled against it by appellant, and that it properly declared the law of the case.

*Instruction 3.*

IX. The trial court is charged with error in sustaining an objection of the state to a question propounded by defendant to T. T. Quillen. This witness testified at the instance of the State that, as far as he knew, the reputation of prosecutrix in that community for chastity and virtue was good. On cross-examination the following occurred:

*Keeping Company.*

"Q. Now, Mr. Quillen, did you hear of her keeping company with other boys?"

The court sustained an objection to this question, and that is assigned as error.

The testimony of this witness was simply cumulative. There were nine or ten other character witnesses who testified in substance the same as Quillen. There was no counter-evidence of this character offered by defendant. The question does not mention any date, and the evidence is undisputed that prosecutrix went with other boys before her alleged engagement. It could not be considered as an attack upon her chastity or virtue, even if she had kept company with other boys. This witness testified on cross-examination that he did not know a thing about prosecutrix keeping company with other boys. He was not even asked if it was neighborhood rumor. Even if some individual had told witness the prosecutrix had been keeping company with other boys, it would have been hearsay testimony and clearly incompetent. If the purpose of the question was to show that prosecutrix kept company with other boys after November, 1918, when she claims to have become engaged to defendant, as a circumstance tending to show she did not consider herself engaged to defendant, the

question should have been framed accordingly. There was no necessity for resorting to such hearsay testimony, when the evidence was *undisputed,* that in *August,* 1918, prosecutrix was keeping company with other boys. We are of the opinion that the court committed no error in sustaining the objection to the question *as asked,* and that defendant was not injured thereby.

X.   Appellant contends that error was committed by the trial court in permitting Mr. O. O. Brown, special counsel for the State, to make improper remarks in the argument of the case, without being rebuked.

*Argument to Jury.*

It is not claimed in defendant's brief that the alleged remarks were objected to, or that the court was requested to rebuke counsel. If any such thing occurred, it was not made a matter of record, is not contained in the transcript, and cannot be considered here. .[Hunicke v. Meramec Quarry Co., 212 S. W. 345; Forsee v. City of St. Joseph, 175 S. W. 577; Torreyson v. United Railways, 246 Mo. 696; Harding v. Railroad, 232 Mo. l. c. 446; State v. Harvey, 214 Mo. 403; State v. Baker, 209 Mo. l. c. 451; State v. Murphy, 201 Mo. 696.]

XI.   It is claimed by defendant that the judgment of conviction cannot stand, because the indictment was endorsed by R. L. Moore, as foreman, and no such person appears on the panel of grand jurors.

*Foreman of Grand Jury: Different Name.*

The panel of grand jurors, as shown by the record before us, contains the name of *Rufus Moore, and no other person by the name of Moore appears on the panel.* No motion to quash the indictment was filed, nor was any objection to the sufficiency of same made during the progress of the trial.

Section 3885, Revised Statutes 1919 (Sec. 5093, R. S. 1909), reads as follows:

"Every indictment must be signed by the prosecuting attorney, and when the grand jury return any in-

288 Mo.—36

dictment into court the judge must examine it, and if the foreman has neglected to indorse it 'a true bill,' with his name signed thereto, or if the prosecuting attorney has not signed it, the court must cause the foreman to indorse or the prosecuting attorney to sign it, as the case may require, in the presence of the jury.''

In the absence of any evidence to the contrary, we will conclusively presume that the trial court did its duty, and necessarily found that Rufus Moore and R. L. Moore were one and the same person.

XII. It is contended by appellant that the verdict is defective, because it was signed by A. A. Paxton, as foreman, when there was no such person on the panel.

Foreman of Trial Jury: Wrong Name.

The list of jurors who tried the case, as shown by the record, contains the name of *Arthur Paxton,* and there is no other person by the name of Paxton on the list. No evidence appearing to the contrary, it will be presumed that Arthur Paxton and A. A. Paxton were one and the same person.

XIII. We have given careful consideration to all the questions properly raised for review in this case, and find no error therein which would warrant us in reversing and remanding the case. The judgment below is accordingly affirmed. *White* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.