# EDWIN F. MERRITT v. KINLOCH TELEPHONE COMPANY and CITY OF ST. LOUIS, Appellants.

### Division One, December 23, 1908.

1. **EVIDENCE: Non-Experts: Opinion: Difficult of Description.** Witnesses who had seen a depression in the earth to the east of the telephone pole are competent to testify, whether experts or not, that in their opinion the depression or hole was caused by the sinking and settling of the earth.· The subject is not a matter of expert testimony, but a matter difficult of description, and as to such matter the opinion of a non-expert is admissible.

2. **NEGLIGENCE: Telephone Company: Unfilled Pole Hole.** An instruction which requires a telephone company, not only to refill the hole caused by the replacing of an old pole with a new one, but to "anticipate and provide for the natural effects of the elements upon earth excavated and replaced, and to use reasonable care to so refill such excavation that the earth placed therein would not, in the natural course of events, sink so as to leave a hole dangerous to persons passing along the street," correctly states the law.

3. ———: ———: ———: **Knowledge By City: Permit.** The issuance of a permit by the city to the telephone company to replace an old pole with a new one at a specific place, brought home to it knowledge that the work was to be done, and knowledge of the resulting depression in the sidewalk caused by the company's failure to properly refill the hole.

4. ———: ———: ———: ———: **Constructive Notice.** Evidence that the depression in the sidewalk or near to it at a rounding in the corner had existed for more than a month before the pedestrian fell into it, is sufficient to authorize the jury in finding that the city was negligent in not discovering it.

5. ———: ———: ———: ———: **Actual Notice.** Evidence that the police officer reported the depression in or near the sidewalk to his superior officer and that such was the usual routine of making reports to the proper city officials of the condition of sidewalks, is evidence of actual notice to the city.

Appeal from Audrain Circuit Court.—*Hon. Jas. D. Barnett*, Judge.

AFFIRMED.

*Boyle & Priest* and *Edward T. Miller* for appellant, Kinloch Telephone Company.

(1)   The defendant Kinloch Telephone Company's demurrer should have been sustained.  Plaintiff failed to prove any act of negligence charged against said defendant and relied upon for a recovery.  Said defendant's requested peremptory instruction should have been given, because said defendant's undisputed evidence conclusively disproved any theory of liability for plaintiff's injuries.  Yarnell v. Railroad, 113 Mo. 570; State v. Lackland, 136 Mo. 26; May v. Crawford, 150 Mo. 504; Mockowik v. Railroad, 196 Mo. 550; Rodan v. Railroad, 207 Mo. 392; Ward v. Andrews, 3 Mo. App. 275; Diel v. Railroad, 37 Mo. App. 454; Breen v. Cooperage Co., 50 Mo. App. 214; Sackberger v. Grand Lodge, 73 Mo. App. 38; Haycraft v. Grigsby, 88 Mo. App. 354; Haines v. Pearson, 100 Mo. App. 551; United States v. Ross, 92 U. S. 281; Kendall v. Jenkins, 118 Mass. 334; Starkie on Evidence (10 Am. Ed.), p. 80.   (2)   The court erred in permitting plaintiff's witness Hannon to testify that the depression on the east side of the pole was caused "by the earth settling around the pole, sinking down," and in permitting plaintiff's witness Warrance to testify that the hole was caused by a "Kinloch pole," and in giving his conclusions as to the manner in which the hole was formed and the causes of it.   Taylor v. Railroad, 185 Mo. 256; Glasgow v. Railroad, 191 Mo. 347; Roscoe v. Railroad, 202 Mo. 576.   (3)   The court erred in giving plaintiff's instruction 1.   (a)   It assumes that the natural effect of the elements upon earth excavated and replaced was to cause a depression, in the face of plaintiff's testimony that a hole properly filled would not result in a depression.   (b) It made it obligatory upon defendant to provide for

the natural effects of the elements upon earth exca-
vated, when at most defendant would be required to
only exercise ordinary care in the premises. (c)
There was no testimony upon which to base the submis-
sion that the hole was negligently and carelessly filled.
The testimony, on the contrary, shows that the hole
that was dug by defendant west of the pole (concern-
ing which alone there was testimony as to the manner
of re-filling) was filled in the most careful manner.

*Charles W. Bates* and *Benjamin H. Charles* for
appellant, City of St. Louis.

(1) Plaintiff must recover, if he recovers at all,
on the negligence pleaded. He cannot recover on
proof of any other negligence, which, if properly plead-
ed, might have constituted a good cause of action.
Hesselbach v. St. Louis, 179 Mo. 524; Cole v. Armour,
154 Mo. 351; Chitty v. Railroad, 148 Mo. 75; McCarty
v. Hotel Co., 144 Mo. 403; McManamee v. Railroad,
135 Mo. 447; Yall v. Gillham, 187 Mo. 408; Yarnell v.
Railroad, 113 Mo. 570; Waldhier v. Railroad, 71 Mo.
514. And plaintiff's right to recover is limited to the
specific acts charged. Chitty v. Railroad, and other
cases cited, supra. The substance of the charge
against the city is that although its proper servants
and agents directed the excavation, and therefore
knew, or by the exercise of ordinary care could have
known, of the Kinloch Company's negligence in time,
etc., nevertheless the city did nothing to refill the ex-
cavation. This is specific, but there is no evidence
to sustain it. (2) There is a failure of proof as
against the defendant city. (a) There is no evidence
sustaining the allegation that the excavation was done
under the direction of the city acting through its prop-
er servants and agents. (b) Nor that its proper ser-
vants and agents (apparently the same ones under
whose alleged direction the excavating had been done)

had actual or constructive knowledge of the subsequent depression. (3) The jury disregarded the physical facts clearly established by the evidence; especially the uncontradicted fact that the only hole dug by the Kinloch Company was one west of the pole, while the plaintiff says he fell on the east side of the pole. (4) The city is not an insurer of the safety of persons passing through the public highways. Warren v. Independence, 153 Mo. 598; Carvin v. St. Louis, 151 Mo. 334; Baustian v. Young, 152 Mo. 317; Buckley v. Kansas City, 156 Mo. 16; 3 Abbott on Mun. Corps., sec. 1014. And yet that is what it becomes under the state of the record above pointed out.

*Johnson, Houts, Marlatt & Hawes, L. L. Leonard* and *Fry & Rodgers* for respondent.

(1) The evidence shows conclusively that the excavation made by the Kinloch Telephone Company was on the east side of the telephone pole, and it was a fair and reasonable inference under all the facts shown that the hole which caused plaintiff's injuries, being in the same place where the excavation was made, was caused by the sinking of the earth replaced in the excavation. Phippin v. Railroad, 196 Mo. 343; Daken v. Merc. Co., 197 Mo. 254; Buesching v. Gaslight Co., 73 Mo. 219; Settle v. Railroad, 127 Mo. 326; Naughton v. Gaslight Co., 123 Mo. App. 200. (2) The testimony of witness Warrance as to the cause of the depression was admissible under the rule which allows the opinion of common observers to be given when testifying to the results of their observation made at the time in regard to common appearances or facts and a condition of things which cannot be reproduced and made palpable to a jury. Com. v. Sturtivant, 117 Mass. 133; State v. Patrick, 107 Mo. 175; Elsner v. Supreme Lodge, 98 Mo. 645; State v. Parker, 96 Mo. 392-3; McPherson v. Railroad, 97 Mo.

256; Hemen Construction Co. v. O'Brien, 81 Mo. App. 641; Standley v. Railroad, 121 Mo. App. 543; Fulton v. Railroad, 102 S. W. 49; Stotler v. Railroad, 200 Mo. 123; Railroad v. Bradley, 54 Fed. 633; 6 Thompson, Negligence, sec. 7750; State v. Pike, 49 N. H. 423; 1 Greenleaf, Evidence (16 Ed.), p. 549; 3 Wigmore, Evidence, pp. 2541-2564. (3) The admission of the testimony of Warrance as to the cause of the hole could not prejudicially affect the city of St. Louis. (4) Plaintiff's instructions are correct. Southern Express Co. v. Water Co., 54 Ark. 133; Johnson v. Friel, 50 N. Y. 680; 15 Am. and Eng. Ency. Law, 436.

GRAVES, J.—Plaintiff sues for personal injuries alleged to have been occasioned by a hole or depression in that portion of the street or sidewalk in the city of St. Louis at or near the northwest corner of Newstead avenue and Lucky street. Newstead avenue runs north and south and Lucky street east and west. Plaintiff, as alleged, was walking north on the west side of Newstead avenue. At or near this corner the defendant Kinloch Telephone Company had a telephone pole, which it desired to remove and replace with a new and different one. Before doing so, it obtained, upon proper application, a written permit from the city, in this language:

"PERMIT 1192.

Marked Exhibit B-2.

"September 18th, 1901.

"Permission is hereby granted to Kinloch Telephone Company to replace its pole on the northwest corner of Newstead avenue and Lucky street with a forty-five foot pole, per application of September 13th, 1901. Said work must be done under the supervision and control of the Supervisor of City Lighting and to his satisfaction."

The fall by which plaintiff was injured was on February 5, 1902. The charge is that under this permit the telephone company made an excavation for the purpose of removing the old pole and putting in the new one. That it so left the ground that when the dirt settled a hole was created, which was permitted to remain, and in which plaintiff slipped and fell, receiving the injuries sued for in this action. Suit was first brought in the city of St. Louis, but by agreement a change of venue was taken to Audrain county, where the cause was finally tried, resulting in a verdict for the plaintiff in the sum of $4,000, upon which judgment was entered. The trial was had upon a second amended petition in which the city was a party defendant. The original petition was against the Telephone Company alone. Answer of each defendant was a general denial and a plea of contributory negligence. Reply general denial. The appeal reaches this court owing to the fact that the city is a party, the amount of the judgment being less than the usual jurisdiction of this court.

Each defendant has filed a separate brief raising questions peculiarly applicable to itself. This necessitates a separate discussion in the course of the opinion, but there are some essential facts which are common to both, and these we will now state.

As stated above, the plaintiff, at about seven o'clock on the evening of February 5, 1902, was walking north on the west side of Newstead avenue. It appears that there was more or less snow and ice upon the walks. When he reached the south side of Lucky street he came to a brick crossing which was eight feet in width. On this crossing was a foot-path (as we take it, in the snow and ice), which had been used by pedestrians. This path the plaintiff followed. There was a lamp-post, upon which was a lighted lamp, at the southwest corner of Newstead avenue and Lucky street, but plaintiff claims that after getting half way

or more across the street, this lamp being at his back, his vision was not materially aided thereby.  A line continued straight north from the west line of the brick crossing upon which plaintiff was travelling would include a telephone pole belonging to the Kinloch Company in the walk just north of the curb on the south side of the north sidewalk on Lucky street. Plaintiff claims that to the east side of this pole was a large deep depression occasioned by the sinking of the earth following the setting of a new pole instead of an old one which was taken out.  It appears that from the fence line to the outside line of the curb was a space of ten feet.  In the center of this was a granitoid sidewalk six feet in width, thus leaving two feet of dirt space to the north and two feet to the south, but out of the south two feet would be taken the curb rock space, which was six inches.  The dirt space then to the south side of the walk would be eighteen inches.  In this space was located the telephone pole in question.  To the west of the telephone pole, partly in the granitoid and partly in the dirt space south thereof was a fire-plug box.  The following plat, introduced in evidence, shows the situation:

Plaintiff says that as he was stepping up from the brick crossing to the curb and sidewalk his left leg slipped into the hole on the east side of the telephone pole, causing him to fall and break his leg. That there was a hole in this walk, or the dirt portion thereof, to the east of the telephone pole, for some considerable length of time prior to the accident, is well established. There is also evidence tending to show that the police force made report thereof. This was as early as January 3, 1902, over a month prior to the accident. As to whether this report and knowledge went further than the police department is a mooted question, although the practice in St. Louis seems to have been that reports of sidewalk conditions coming from the police department, in regular order, reached the proper department, whose duty it was to see that repairs were made. It also appears that the Kinloch Company had persons whose duty it was to report the facts, if there should be sinks around the poles, but it also appears that this particular sinking was not reported, nor were there any reports as to the numerous other poles of the company in the city. In other words the testimony from the side of the company gave each and every pole set by the company a clear bill of health in this regard.

For the Kinloch Company, the evidence tends to show that in taking up the old pole and resetting the new the excavation was made wholly upon the west side of the old pole, whilst in opposition thereto the testimony upon the part of plaintiff was to the effect that the fire-plug box was within six inches of the west side of the pole to be removed, and that it protruded three inches or more over the granitoid sidewalk into the dirt space between it and the curb, so that there would be but fifteen inches of space in which to dig a hole six feet deep, in which it appears that men, at the time of the digging, actually went down into and worked. This states sufficient of the facts to en-

able à discussion of the points raised. Inasmuch as each defendant has filed a separate brief and made separate contentions, we will take up those of the Kinloch Company first in the course of the opinion.

I. At the threshold of this case, in so far as the Kinloch Telephone Company is concerned, we are met with a question of the admissibility of evidence. Witnesses who had seen the depression in the earth to the east of the telephone pole testified that in their judgment the depression or hole was caused by the sinking or settling of the earth. It may be conceded that these witnesses were not experts. Nor do we think the question is one of expert testimony. These witnesses saw the conditions and saw the depression. It is a matter difficult of description. It would be hard for a witness to so describe the conditions as would place the jury in possession of the same impressions obtained by the witness. In such case the opinion of a non-expert witness is proper and may be admitted. In Elsner v. Sup. Lodge, 98 Mo. l. c. 645, we said:

"There are many instances in which the statement by witnesses of opinions on a fact in issue are receivable in evidence. One class of these cases embraces subjects of such a nature as cannot be practically presented by description with sufficient accuracy to convey a satisfactory impression to the hearer. Regarding these subjects evidence usually called 'of opinions' is admissible on grounds of necessity in the practical administration of law. Some illustrations of its admissibility are readily furnished by our own decisions, for instance, in relation of identity of person and of property. [State v. Babb, 76 Mo. 501; Greenwell v. Crow, 73 Mo. 638.]"

See, also, Stotler v. Railroad, 200 Mo. l. c. 123, where a review of the rule is again made by this court.

There is no parallel between this and Roscoe v.

Railroad, 202 Mo. 576. The question under discussion
there was what was a proper question to be propounded
to an expert witness.

II. But passing this point, it is urged that all
the positive evidence tends to show that the hole dug
by the Kinloch Company was upon the west side of
the pole and not upon the east side. This defendant
urges that it is only by the merest inference that it
could be said that it dug the hole into which the
plaintiff fell, but it is not seriously denied that there
was a depression on the east side of the pole which
occasioned the injury to plaintiff. But in view of all
the facts, can it be said that it is the merest inference
as to whether or not defendant Kinloch Company dug
to the east or the west of the old pole? We think not.
True it is that the employees of the company all say
that the hole was dug to the west of the old pole, and
no digging was done to the east thereof. Opposed to
this theory and this testimony is the depression to the
east of the pole. Further opposed to it is the fact
that the fire-plug is to the west and made it practically
impossible to dig a trench of sufficient width to slide
out the pole, so as to leave the place vacant for the
new one. It seems that they usually dug a trench
some several feet in length to one side or the other
of the old pole, and in this instance six feet deep.
When this is done they slide the old pole to a position
in the trench, with the wires still attached, and then
later place the new pole in the place formerly oc-
cupied by the old one, and then detach the wires and
reattach to the new pole, after which the old pole is
finally removed and the place filled up and tamped.
To our mind, taking all this evidence and this plat
which gives exact distances, it was not an unreasonable
inference for the jury to say that these workmen were
in error when they testified that no excavation was
made by them to the east of this pole at the point

where the depression shortly thereafter appeared. The witnesses say that the hole to the east had the appearance of having been occasioned by the sinking of earth and those of us who have seen the settling of earth around a recently set fence post, can appreciate the force of the testimony. It is more substantial than *mere* inference to be drawn from all the facts. By all the facts we mean not only the verbal testimony as to where the company actually dug the hole, but likewise all other facts detailed tending to show that there was an error or mistake in this oral testimony. Taking it all there was substantial testimony from which the jury could draw a reasonable inference and conclusion.

III. As to the Kinloch Company but one other point need be mentioned. The petition charges that this company negligently filled the hole so that the earth would sink and thereby negligently caused the depression into which plaintiff fell. It also further charges that such company negligently failed to refill the hole, and knowing the conditions negligently failed to guard the place. The instructions given for the plaintiff properly present the questions of negligence charged to this defendant. The first instruction given reads:

"The court instructs the jury that it was not only the duty of the defendant Kinloch Telephone Co. to use reasonable care to refill the excavation in a proper and safe condition for the time being, but it was its duty to anticipate and provide for the natural effect of the elements upon earth excavated and replaced, and to use reasonable care to so refill such excavation that the earth placed therein would not, in the natural course of events, sink so as to leave a hole dangerous to persons lawfully passing along the street; and if you find and believe from the evidence that the defendant Kinloch Telephone Company made the excava-

tion in question, and so negligently and carelessly refilled it that the action of rain or other natural agencies upon the earth placed therein caused the same to sink and leave a hole dangerous to persons lawfully passing upon the street, and that plaintiff, while in the exercise of due care on his part, stepped or fell in said hole by reason of its unsafe condition, and was injured, then you will find for the plaintiff as against the defendant Kinloch Telephone Company.''

This instruction as well as another is criticised, but we see no error in either. The one quoted fully presents one ground of negligence, and the other as fully and fairly the other ground.

The contentions of the Kinloch Company will be disallowed.

IV. Then passing to the contentions made by the city. This defendant urges the question about the admissibility of evidence which we have just discussed, and also that there was no showing that the Kinloch Company sank a hole to the east of the old telephone pole. This question will need no further attention.

In this case it is urged that the work of changing the poles was not done under the direction of the city by the proper officers of the city and that the city through its proper officers had neither actual nor constructive knowledge of the depression. This is a pure question of fact rather than one of law. The city issued its permit for this work to be done. The permit issued is evidence of knowledge upon the part of the city that such work would be done. Cities in the exercise of their general police powers for the protection of the public have the right to require that permits be obtained, and as we have said in Carthage v. Garner and Lawson, 209 Mo. l. c. 703, one of the reasons for the granting of such permits was that the city, always interested in the protection of its citizens, might know just where and when dangerous excavations were to be

made, and this to the end that the citizens, both in person and property, might be protected. The issuance of this permit brought home to the city knowledge that this work was to be done at a certain time and place.

V.   But aside from this there is ample evidence tending strongly to show that this deep depression was there for such sufficient time as would have enabled the city by and through its proper officers, by the exercise of reasonable care, to have discovered it in time to have repaired the same prior to this injury. Much evidence tended to show that it was there for a month and more prior to the injury. It can hardly be said that a jury could not reasonably find that the city officials had been derelict in discovering a depression of the size and character shown by the evidence before us. In addition it appears that a police officer on the beat reported this depression to his superior officer, and that this was the usual routine. Other points are made, but we are of opinion that this case was fairly presented to the jury as to both defendants, upon instructions as favorable to them as could be asked. The judgment is for the right party and is affirmed. All concur.