CATHERINE TEPFER, *Appellee*, v. THE CITY OF WICHITA, *Appellant*.

No. 18,801.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Individual Excavating Street by Permission—Personal Injuries—City Liable.* A city given control of its streets and charged with the duty of maintaining them in a safe condition can not, by any permission it may give to individuals to plow the streets and to remove earth therefrom, avoid liability for injuries resulting to travelers from the negligent manner in which the work is done or the dangerous condition in which the street is left.

2. SAME—*Notice of Condition of Streets—Duty of City to the Public.* Where a city grants permission to a third party to plow or excavate in a street it is bound to exercise diligence for the protection of the traveling public and to know the condition of the street while the work is in progress and after it is done, the same as it would where the work is directly done by its own officers or agents.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed November 8, 1913. Affirmed.

*Earl Blake*, city attorney, *R. C. Foulston*, assistant city attorney, *John W. Blood*, and *C. A. McCorkle*, all of Wichita, for the appellant.

*S. B. Amidon, D. M. Dale, Jean Madalene*, and *Benjamin F. Hegler*, all of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by Catherine Tepfer to recover damages from the city of Wichita for injuries sustained by her while passing along a street of that city which had been plowed and left in a dangerous condition. In going from her home to her place of business she had been in the habit of walking down the center of Elm street, which was unpaved and without sidewalks. On the morning of

October 27, 1910, she went east on Elm street about a block, to Hillside avenue, where she took a down-town car, as was her habit, and at that time Elm street was in a smooth and safe condition. According to her usual custom, she left her business house at about six forty-five o'clock in the evening, to return home, and when she alighted from the street car at Elm street it was then dark, so that the condition of the street was not readily apparent. During the day the street had been plowed, leaving furrows and large clods in the part of the street ordinarily used by pedestrians. She started up the street in the darkness, and stepping into a furrow she stumbled and fell, sustaining serious injuries. The testimony in her behalf was to the effect that the commissioner of the city had authorized one Campbell, who needed earth for private use, to plow Elm street and take dirt therefrom. The commissioner, however, denied that such permission had been granted, and testified that no authority had been given to Campbell or any one else to take dirt from that street at that time. In answer to a special interrogatory the jury found that although Campbell, who plowed the street, was not an officer of the city, the work was done by him with the permission of the city, and that authority to plow the street was given to him by H. J. Roetzel, the commissioner in charge of the streets. The general verdict was in favor of the appellee, and in its appeal the city insists that as the plowing was not done by any officer, agent, servant or employee of the city it can not be held liable for injuries resulting from the plowing of the street by others unless the city had actual or constructive notice of the defect and a reasonable time thereafter to discover and remedy the defect. The trial court instructed the jury on the several phases of the case, but practically eliminated the matter of notice in case the plowing was done by au-

thority of the city. In one of the instructions given it was said:

"If you find that the City of Wichita or H. J. Roetzel, as Commissioner of the City of Wichita, authorized one Campbell to plow up the street in question and remove the dirt therefrom and that said Campbell plowed up the street or removed the dirt therefrom and left it in a dangerous condition and did not place lights or other signals to warn the public of its condition, then you are instructed that the city is charged with knowledge of the condition of said street."

Assuming, as we must, that the street was plowed with authority from the city commissioner, it must be held that the city is chargeable with notice and knowledge of the dangerous condition caused by the authorized act. The city, having been given the control of the streets and charged with the responsibility of maintaining them in a safe condition for use by the public, can not, by any contract which it may make or permission which it may give to third persons to dig therein, avoid liability for injuries resulting from a breach of this primary duty. The obligation to discharge this duty can not be evaded by entrusting the duty to others, nor can the city escape liability for resulting injury because the plowing of the street was done by another under its authority. So far as its liability is concerned, it is immaterial whether the defect in the street is caused by the direct act of the city or that of a third party acting under authority of the city. If the plowing of the street had been done by officers or employees of the city, it would not have been necessary to have given the city special notice of the dangerous condition of the street, and no more was it necessary where a third party was authorized to plow it and to take earth therefrom. In *City of Salina v. Trosper*, 27 Kan. 544, permission had been given to a property owner to excavate a cellarway in the street, which was left open and unguarded for several days and into which a person accidentally fell. Although

Tepfer v. City of Wichita.

the excavation was known to some of the city officers and had existed so long that the city was deemed to have implied notice of the danger of the place and was therefore liable without the giving of a special notice, there was a suggestion by the court that permission having been granted to excavate in the street the city was bound to know at all times of the excavation and the exact condition of the street. It was also remarked that the parties who made the excavation were liable for the resulting injury, but that their liability did not relieve the city from liability, as it was charged with the primary duty of keeping the streets in a reasonably safe condition, and that as it had given permission to another to dig up the street it would be deemed to have knowledge of the dangerous excavation even if no notice had been given to any city officer. In *Kansas City v. McDonald,* 60 Kan. 481, 57 Pac. 123, 45 L. R. A. 429, where permission was given to deposit building material upon a street opposite a building in process of construction, it was held that such an encroachment on a street was not unlawful; "yet, such use being exceptional and foreign to the purpose for which the thoroughfare was laid out and maintained, the duty devolved upon the city to exercise vigilance with respect to the rights of a traveler who might be harmed by such obstructions in his way." (p. 490.)

The question of notice was presented in *Mehan v. St. Louis,* 217 Mo. 35, 116 S. W. 514. Obstructions had been placed in an alley under permission from the city and the sufficiency of a petition was challenged on the ground that it did not allege that notice of the existence of the obstructions had been brought to the attention of the city, and it was held that where a city grants permission for an act to be done in the streets the law charges it with notice of everything which is done pursuant to that permission. In the opinion it was said:

"The petition also states a good cause of action without the last allegation mentioned, for the reason that

46—90 Kan.

where the city grants permission for an act to be done in the street, then the law charges it with notice of everything which is done in pursuance to that notice, and, of course, the party who performs the act is not entitled to notice, for the obvious reason that he has actual knowledge thereof.

"That rule is sustained by the common sense of the situation, and by an unbroken line of authority in both this and other States." (p. 46.)

In *The Mayor, etc., of Savannah v. Donnelly,* 71 Ga. 258, an injury had resulted to a traveler who fell into an excavation or ditch in one of the streets of the city. The city had given permission to an individual to open a ditch across the street in order to connect water pipes, and it was held that the relation of the city to the work done was such that notice to it was unnecessary. The court treated the opening of a ditch by express permission of the city as in effect the opening of the ditch by the city itself, saying:

"It was the act of the city; and it was liable for any damages which might accrue to any person by reason of the careless and negligent manner in which the work was done. It was the duty of the city to have superintended and overlooked the work which it permitted to be done on its streets, and to have seen to it that the work was done in such a manner that no injury should come to any one passing along the street from any defect in the work. The question of notice, for these reasons, is not in this case." (p. 259.)

In *City of Louisville v. Keher,* 117 Ky. 841, 79 S. W. 270, 25 Ky. Law Rep. 2003, an obstruction was placed in the street by permission of the city and no light warning travelers of the obstruction was placed near it. A person riding in the night ran against it and sustained an injury. It was contended that the city could not be held liable for the injury unless it had notice that lights had not been placed upon the obstruction. The court remarked that:

"To so hold would be to relieve the city entirely of its primary duty to keep its streets in a reasonably safe

condition. It had authorized or acquiesced in the ob-
struction of the street, and therefore had notice of the
obstruction. Knowing the obstruction, it was bound
to exercise ordinary care for the protection of the
traveling public in giving warning of the danger."
(p. 853.)

. The supreme court of the United States had before it
the question of the liability of the municipality to one
who fell in an opening in the sidewalk, and in speaking
of the effect of permission to excavate for water mains,
gas pipes or sewers it was said:

"If a permit is granted, as is usually the case, the fact
is notice to the authorities that the work is in progress,
and then they are charged with the duty of seeing that
it is properly conducted." (*District of Columbia v.
Woodbury*, 136 U. S. 450, 464, 10 Sup. Ct. Rep. 990, 34
L. ed. 472.)

(See, also, *Merritt v. Telephone Co.*, 215 Mo. 299, 115
S. W. 19; *The City of Logansport v. Dick, Administra-
trix, et al.*, 70 Ind. 65, 36 Am. Rep. 166; *Park et al. v.
The Board of Commissioners of Adams County*, 3 Ind.
App. 536, 30 N. E. 147; *Anderson & Son v. May. &
Coun. of Wilm.*, 8 Houst. [Del.] 516, 19 Atl. 509; 4
Dillon, Municipal Corporations, 5th ed., § 1720.)

In *Columbus v. Penrod*, 73 Ohio St. 209, 76 N. E. 826,
3 L. R. A., n. s., 386, 112 Am. St. Rep. 716, a different
view was taken and a distinction was drawn between an
act done in a street under a license, and which but for
such license would be illegal or a nuisance, and acts
which did not create nuisances nor require licenses
from the municipality to legalize them. Accordingly, it
was held that a permit to use part of a street for the
placing of material used in the construction of a build-
ing on adjoining property was a mere regulation of the
right of the property owner to make use of the street
and that a city would not be liable in damages to a per-
son injured in consequence of the obstruction and the
failure to guard it with lights unless it had notice of
the omission of the property owner to place the lights

there, and after such notice was guilty of negligence. This case, however, is out of line with our own (*Kansas City v. McDonald,* 60 Kan. 481, 57 Pac. 123, 45 L. R. A. 429), and apparently is against the weight of authority on the subject.

The instructions of the court are, in the main, in accord with the view we have taken, and we find no substantial error in them.

On the motion for a new trial appellant alleged surprise at the testimony given on the trial to the effect that the city had given permission to Campbell to plow in the street, and affidavits were filed alleging that such permission was never given. The petition, however, alleged that the work was done with the knowledge and under the supervision of officers of the city, and hence there is little ground for surprise at the testimony that it was done with the permission of the city. Besides, there was a counter affidavit which, in effect, stated that when the claim of appellee was first presented to the city for allowance Roetzel, the commissioner, stated that he had given Campbell permission to remove dirt from the street, and that Campbell had then agreed to do it in a proper manner and so save the city from liability. It is clear that the showing made did not require the granting of a new trial.

The judgment will be affirmed.