STATE of Missouri, Respondent,

v.

Charles Albert BURCHETT, Appellant.

No. 45471.

Supreme Court of Missouri,

Division No. 2.

May 13, 1957.

Clayton W. Allen, Rockport, John J. Robison, of Robison & Miller, Maysville, for appellant.

John M. Dalton, Atty. Gen., Russell S. Noblet, Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

The defendant, Charles Albert Burchett, was charged by information in the Circuit Court of Nodaway County with the crime of manslaughter growing out of an automobile accident. On change of venue the case was transferred to Andrew County where the defendant was convicted by a jury and his punishment assessed at nine years' imprisonment in the state penitentiary. Defendant's motion for new trial was overruled, and he appealed.

The state's evidence tended to show that on November 7, 1954, at about 2:30 a. m., the defendant was driving a one-half ton Ford V–8 pickup truck north on U. S. Highway 71, a concrete surfaced road, at a point about one and one-half miles north of Maryville. The highway, quite straight at this point, descends into a valley, north of which it ascends a distance of approximately 1,000 feet to the top of the hill. The northward ascent is marked with a "no passing" zone.

Ahead of the defendant, and also northbound, was a Plymouth automobile, 1951 model, occupied by Mr. and Mrs. Ray Wright who were driving to their home in Iowa. As the automobiles started up the hill the defendant increased the speed of his truck, pulled out suddenly and undertook to pass the Wright automobile, and came into collision with a southbound 1937 Plymouth coupe occupied by Mr. and Mrs. Ivan Glea Rogers and their ten month old child. The point of collision was about 40 feet or three car lengths north of the beginning of the highway markings indicating the "no passing" zone and on the west side of the pavement in the line of southbound traffic. Defendant's truck had about come abreast of the Wright automobile when the head-on collision with Rogers' car occurred. The left side of the Wright automobile was struck and damaged, but it was able to proceed and clear itself of the wreckage. The defendant's truck struck the Rogers' coupe with sufficient force to knock it back northward about 20 feet. The Rogers' car came to rest headed approximately northwestward on the west side of the pavement and shoulder with defendant's truck at its rear. The Rogers' car was completely wrecked. As one witness said, it appeared to have "exploded." Rogers was thrown to the pavement and was apparently dead when the first passing motorists arrived. The Rogers' ten month old baby was also killed.

The defendant was injured and was taken to the hospital in Maryville by friends who, by chance, came along immediately after the collision.

Joe Summers, returning to his home in Iowa from a vacation trip, was driving a short distance behind the defendant when the accident occurred. He was the state's principal witness as to the manner of its occurrence. Photographs of the damaged automobiles taken at the scene evidence a terrific impact. There was evidence that the defendant had been drinking and was intoxicated at the time of the accident. The defendant denied that he was intoxicated or that he had been drinking. Further details of the evidence will be referred to in the course of the opinion.

The defendant presents twelve claims of error for our consideration. Prior to the trial, he filed a motion to suppress certain evidence. He alleged in the motion that shortly after the accident and without his knowledge and consent a sample of his blood was taken for the purpose of testing it for its alcoholic content and that the result of such test constituted incompetent and illegal evidence and "even though the Court should sustain the objection of the defendant to such evidence when offered the offer would prejudice the jury against the defendant, and that any admonishment by the Court to the jury to not consider such offer could not remove the prejudice created by said offer." The motion was taken up prior to trial and sustained with respect to the blood test.

At the trial Sergeant J. W. Wahn, a member of the Missouri Highway Patrol for 17 years, testified that the defendant was gone when he arrived at the scene of the accident. He talked with the defendant "later that day in the hospital in Maryville" and the defendant told him that he was driving and was alone in the pickup truck. The following then occurred:

"Q. Do you know of your own knowledge as to whether or not the defendant was intoxicated at that time? A. Yes, sir.

"Mr. Robinson: What time?

"Q. What, if anything, do you know?

"Mr. Robinson: We will object to that.

"The Court: Let us fix the time and place.

"Q. At the time of the accident or immediately thereafter? A. I know that he was intoxicated according to the blood test that we took.

"Mr. Allen: We will object to that and ask that the jury be—

"The Court: Sustained.

"Mr. Robinson: —that the jury be discharged and a mistrial be declared. This is something that cannot be cured and we ask that the jury be discharged because of the prejudice and bias that has been injected into this case by the Prosecuting Attorney. It was incompetent evidence.

"The Court: Are you through?

"Mr. Robinson: Yes.

"The Court: The objection is sustained and the jury is instructed and directed to disregard the latter part of this statement and may I suggest that you ask the sergeant questions on this feature; ask him when he first saw the defendant and what he observed, if anything, about the defendant, and when he did see him. It is rather improper to ask him for his conclusion at the time of the accident, particularly in view of the fact that he said he didn't see the defendant at the time of the accident or while he was out there at the scene. The Motion to Discharge the jury is denied.

"Out of the Hearing of the Jury.

"Mr. Robinson: We renew the objection and renew our request that the jury be discharged for the reason that the defendant previous to the opening statements filed a Motion to Suppress any evidence as to any blood tests; that the State of Missouri confessed Said Motion as to blood test and admitted that any such evidence was incompetent; that same was taken without the knowledge and consent of the defendant.

"Mr. Allen: And in violation of his constitutional rights.

"Mr. Robinson: (Continuing) And in violation of his constitutional rights and that the conduct of the State in bringing said matter before the jury, knowing from the nature of the question that the witness would say that he knew because of blood tests, has prejudiced the rights of the defendant to such an extent before this jury that no admonition of the Court to the jury to disregard it, will remove the prejudice caused by the improper conduct of the Prosecuting Attorney.

"Mr. Allen: And that the admonition of the Court was insufficient to cure the error.

"The Court: What do you want me to say?

"Mr. Allen: We want you to discharge the jury.

"The Court: Do you have any suggestions as to the admonition?

"Mr. Robinson: We will be very happy if you want to admonish the witness.

"Mr. Allen: We think that any further statement before the jury in this record, and for the record, simply magnifies the error, and we are renewing our objection that this jury be discharged and a mistrial be declared.

"The Court: The Court feels that the answer was not brought about by any improper questions on the part of the State. The Court also feels that it has not resulted

in any undue prejudice with respect to the jury, and this comment of the Court is made out of the hearing of the jury."

Further direct examination of Sergeant Wahn disclosed that he first saw the defendant at the hospital in Maryville about 2:30 or 3:00 o'clock in the afternoon, about 10 or 12 hours after the accident. The defendant alleges error because of the trial court's refusal to discharge the jury and declare a mistrial.

The state concedes that the witness' answer was improper, but contends that the evidence was only cumulative and the action of the trial court was effective to keep the error from being prejudicial. The state relies upon State v. Vidauri, Mo., 293 S.W.2d 955, 956 [2], where the voluntary statement of a witness that he had been told that the defendant was a participant in the crime was held to be cumulative and not prejudicial under the circumstances, and State v. Hinojosa, Mo.Sup., 242 S.W.2d 1, 8 [15], where the question of a physician's competency to testify was held to be immaterial because his evidence that the defendant was intoxicated "was merely cumulative upon an issue which was so thoroughly and overwhelmingly established by other testimony as to make it certain that no prejudice could possibly have resulted to defendant, * * *." We think the testimony in the case at bar differs not only in degree but also in character from that in the cases cited.

The question of defendant's intoxication was material, bearing as it did upon his culpable negligence. On behalf of the state, Sergeant Wahn testified that the defendant told him that "he had not been drinking very much. He had been drinking a little, not very much." Two police officers who saw the defendant at the American Legion Hall before the accident testified that defendant was staggering and his speech was not clear. One said he was intoxicated. Harry Scott, who worked for the Price

Funeral Home, saw the defendant at the hospital after the accident, smelled liquor on him, and thought from the way he talked that he was intoxicated. Nina Dougan, a nurse at the hospital, testified that she smelled liquor on the defendant's breath and it was her opinion that he was intoxicated. On the other hand, Edwin Weiderholt, who took the defendant from the scene of the accident to the hospital, on the stand for the state testified that he didn't see any evidence of the defendant's being intoxicated. On behalf of the defendant two witnesses who saw the defendant at the American Legion Hall saw nothing wrong with the defendant and couldn't say that he was intoxicated. N. D. Vendetti, who ran the American Legion Club, testified that defendant drank Coca-Cola but no liquor at the club that night and did not appear to be drunk. Dolores Weiderholt smelled liquor in the car which conveyed defendant to the hospital but couldn't say it was on the defendant. The defendant himself testified that he had not been drinking prior to the accident; that he did not drink any intoxicants of any kind or character at the Legion Hall, the only drinks he had being two bottles of Coca-Cola.

■ While the evidence that the defendant was intoxicated at the time of the accident is substantial and strongly persuasive, there is also evidence to the contrary. It was the principal contested issue and an important one. The jurors could not fail to be impressed by the testimony that the test of defendant's blood for alcoholic content showed him to have been intoxicated at the time. We do not think the erroneous testimony can be excused on the ground that it was merely cumulative.

The court permitted part of Sergeant Wahn's answer to stand, presumably the statement that the witness knew that the. defendant was intoxicated, although the direct examination further disclosed that the witness did not see the defendant until about 12 hours after the accident occurred.

His opinion could have no factual basis if not related to the blood test.

■ The trial court, out of the presence of the jury, stated that he felt the answer "has not resulted in any undue prejudice with respect to the jury." Prejudice, as it affects the defendant's legal rights, is not a matter of degree. If the defendant was prejudiced to any extent by the improper evidence, it was undue and we cannot say that the defendant had a fair and impartial trial according to the law and the evidence.

■ Where the improper evidence is so impressive that the appellate court is of the opinion that its effect was not removed by the remarks of the trial court, a new trial will be granted. National Cash Register Co. v. Kay, Mo.App., 119 S.W.2d 437; Armour & Co. v. Kollmeyer, 8 Cir., 161 F. 78, 88 C.C.A. 242, 16 L.R.A.,N.S., 1110. We are impressed, as we feel the jury must have been, by the scientific nature of this evidence. On the record before us it appears that the prejudice resulting was not eradicated and a new trial should be granted for this reason.

Defendant complains of the prosecuting attorney stating his personal belief of defendant's guilt during the closing argument on behalf of the state. The transcript shows this occurrence:

"Mr. Lance [the prosecuting attorney]: * * * It is up to you to say to this person that he shall not do it again and serve as a warning to others who may be inclined to do the same thing; that they shall not endanger your lives and the lives of other citizens in this State by being so reckless and negligent as to constitute culpable negligence, which I believe has been done in this case—

"Mr. Robinson: I will object to this statement. It is an improper statement. The Prosecutor states what he believes has been done in this case.

"Mr. Lance: Based upon the evidence.

"The Court: The statement as originally made is improper. Objection sustained to it.

"Mr. Lance: Considering all the evidence, I feel that there can be no other verdict than guilty in this case."

The statement prior to the objection was an expression of the prosecutor's belief not related to the evidence. The trial judge held it to be improper and sustained defendant's objection. The remaining question is whether its impropriety was rendered harmless by the judge's ruling and the prosecutor's further argument.

■ The rule of law is well established in this state that a prosecuting attorney may argue to the jury that in his opinion the defendant is guilty, where he states, or it is apparent, that such opinion is based on the evidence. State v. Fitzsimmons, 338 Mo. 230, 89 S.W.2d 670, 673 [7]; State v. Vinson, Mo., 107 S.W.2d 16, 18 [4]; State v. Myers, 354 Mo. 277, 189 S.W.2d 279. In each of the above cases the court held the admonition of the trial court to be sufficient and approved the trial court's refusal to discharge the jury. In other cases the circumstances have been such as to constitute reversible error. See State v. Pope, 338 Mo. 919, 92 S.W.2d 904, 907 [8]; State v. Pierson, 331 Mo. 636, 56 S.W.2d 120, 125 [10, 11]; State v. Mathis, 323 Mo. 37, 18 S.W.2d 8, 10 [3]; State v. Goodwin, Mo., 217 S.W. 264, 266 [5, 6].

■ The argument of the prosecutor is given a more serious connotation because of the unfortunate disclosure to the jury that the test made of defendant's blood showed him to be intoxicated at the time of the accident. Although the blood test and the prosecutor's belief of defendant's culpable negligence are not connected in the record, it is reasonable to expect the two to become associated in the minds of the jurors. This occurrence tends to support our con-clusion of prejudicial error with respect to the blood test incident, although, standing alone, it would not be considered an abuse of the trial court's discretion.

A substantial question is presented by the defendant's contention that § 546.070 (4), requiring instructions to the jury to be in writing, was violated. The state charged and proved that defendant had been formerly convicted of a felony, an assault with intent to kill, and that he had been sentenced to a term of two years in the penitentiary and discharged after compliance with his sentence. This was proven as a basis for the assessment of the maximum penalty of ten years. After the jury had been deliberating for some time it sent to the court a written question pertaining to punishment and parole. In this perplexing situation the court made an oral statement to the jury which the defendant claims was an instruction and should have been in writing. Such situations are variable and we do not pass on the question since it is not likely to recur upon another trial.

■ At the close of the state's case and again at the close of all the evidence in the case, the defendant requested in writing that the jury be instructed to find him not guilty. The defendant alleges error in the court's refusal to so instruct the jury. The rule applicable to this determination is stated in State v. Hinojosa, Mo., 242 S.W. 2d 1, 3 [1], as follows: "In determining the submissibility of a criminal case the state's evidence, with such inferences favorable to the state as may legitimately be drawn from the facts proved, is to be taken as true, and the evidence of defendant contradictory thereof is to be disregarded." The defendant calls attention to testimony that the lights on the Rogers' car were quite dim and that there was some doubt as to whether there were one or two lights on the car. However, there was substantial evidence that there were lights on the Rogers' car and that they were of sufficient intensity to be observed by the other witnesses who were in no better position than the defendant to see them. There

was positive evidence that the defendant suddenly undertook to pass the Wright car in the "no passing" zone. The evidence in this regard was substantial and sufficient.

The witness Joe Summers testified that after the accident he went to the top of the north hill and undertook to stop the southbound traffic with his flashlight but that one "proceeded on down and made contact with the two cars that were in the wreck." The defendant contends this is evidence of an intervening cause sufficient to create a reasonable doubt as to whether Rogers was killed in the collision with defendant's truck. There was no further evidence by the witnesses of the state or the defense that such automobile contacted the wreckage or, if so, to what extent. On the other hand, the evidence was substantial that the defendant drove his pickup truck into the Rogers' car with terrific force; that Mr. Rogers was thrown to the pavement and that he appeared to be dead before he was moved. There is absolutely no evidence that any other automobile struck him. The evidence was sufficient to submit the issue of defendant's guilt to the jury and it was not within the court's province to direct his acquittal. State v. Hedrick, Mo., 296 S.W. 152, 153 [2].

Defendant contends that the court erred in permitting Nina Dougan, a registered nurse employed by St. Francis Hospital in Maryville, to testify that the defendant was intoxicated when brought to the hospital. The basis of the objection is that she was rendered incompetent by the provisions of § 491.060(5) because at the time she observed the defendant she was giving aid and assistance as an employee of the hospital and administering first aid and doing the things that Dr. Jackson, defendant's doctor, prescribed. The evidence does not support defendant's contention that the nurse, at the time she made the observations upon which she based her opinion, was acting under orders of Dr. Jackson. The defendant was brought to the entrance of the hospital by his friends in an automobile. The nurse testified she was on duty as a hospital employee and that she undertook to help get defendant out of the automobile and into the hospital. She smelled liquor on his breath. He started cursing her and slapped at her, knocking off her glasses and nurse's cap. She then let the other people get him out of the car. The evidence indicates that Dr. Jackson did not arrive until later.

Our statute renders a physician or surgeon incompetent to testify concerning any information which he may have acquired from a patient while attending him in a professional character and which information was necessary to enable him to prescribe for such patient as a physician or do any act for him as a surgeon. It is unnecessary, however, to determine whether there may be circumstances under which a nurse may likewise be rendered incompetent by the statute, since the privilege generally does not extend to transactions and observations made when third persons are present. 58 Am.Jur. 234, Witnesses, § 404. We have so construed this same statute when applied to the attorney and client relationship. Hilgedick v. Nothstine, 316 Mo. 333, 289 S.W. 939, 941 [1]. All of the evidence tended to show that Edwin Weiderholt, his wife Dolores, and Dean Burchett and Helen Emory, who transported the defendant to the hospital, were present. Edwin Weiderholt testified that he was "right there" all the time and did not see the defendant strike at the nurse or knock her cap or glasses off.

Furthermore, the defendant called Dr. William Jackson, his physician, to testify, and the rule is that where several doctors have been in attendance and the patient entitled to the benefit of the privilege calls one of the physicians, that the privilege is waived as to all of them. State v. Sapp, 356 Mo. 705, 203 S.W.2d 425, 429 [2]; Baker v. Baker, 363 Mo. 318, 251 S.W.2d 31, 33 [4], 33 A.L.R.2d 1431. Even if her status were comparable to that of a doctor, the privilege was waived by

calling Dr. Jackson. The court did not err in admitting the nurse's testimony.

Charles Ross, a member of the Maryville police force, and Fred Auffert, another policeman, were called to the American Legion Hall because Bobby Burchett, a 19-year-old nephew of the defendant, was causing a disturbance. Ross testified that the defendant offered to take care of Bobby and because of another police call they departed and left Bobby there with the defendant. On cross-examination defendant inquired as to the nature of the other call and the trial judge sustained the state's objection to the question. The defendant claims error but he made no offer of proof and has failed to indicate how he was prejudiced by the court's ruling. The cross-examination of witnesses is subject to reasonable limitation and should not go to the extent of injecting matters wholly irrelevant to the issues involved and not constituting grounds of impeachment of the witness. Bellovich v. Griese, Mo., 100 S.W.2d 261, 264 [4]; State v. Stegner, 276 Mo. 427, 207 S.W. 826, 830 [16, 17]. On the record before us the question appears to be an excursion into a collateral matter without prospect of producing any relevant evidence. We cannot say that the trial judge abused his discretion, and unless this appears our duty is to deny the claim of error. Wilcox v. Coons, 362 Mo. 381, 241 S.W.2d 907, 915 [20].

The next assignment also relates to the limitation of defendant's cross-examination of a state's witness. On direct examination Edwin Weiderholt testified that he and his companions took the defendant from the pickup truck at the scene of the accident and conveyed him by automobile direct to the hospital. On cross-examination the witness was asked whether in his opinion defendant's condition as he observed it after the accident "was due to injury and shock." The prosecuting attorney's objection, on the ground that the witness had not been shown to be qualified, was sustained. The witness was 27 years old and had been "in the service." In support of his claim of error defendant cites cases dealing with situations where a witness is permitted to draw a conclusion concerning things difficult of description which are the subject of observation in the ordinary experiences of everyday life, such as a depression caused by the settling of the earth, Merritt v. Kinloch Telephone Co., 215 Mo. 299, 115 S.W. 19, 22, and automobile skidmarks on a highway, Brawley v. Esterly, Mo., 267 S.W.2d 655, 662; State v. Ryan, Mo., 275 S.W.2d 350, 352. Obviously the subject matter here involved is not an ordinary experience of everyday life.

Whether a person is in a state of shock as a result of injuries is a proper matter of expert testimony and the witness was not shown to be a person "possessing peculiar knowledge, wisdom, skill, or information regarding a subject-matter under consideration, acquired by study, investigation, observation, practice, or experience, and not likely to be possessed by the ordinary layman or an inexperienced person * * *." McAnany v. Henrici, 238 Mo. 103, 141 S.W. 633, 636 [2]. See also Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, 248 [9]. It is sufficient to say that the witness was not shown to have these qualifications.

Defendant's next complaint is that the state was permitted to cross-examine the defendant on matters not referred to in his examination in chief. When asked on direct examination where he lived, the defendant stated: "I live at St. Joe right now. Originally I lived up around Maryville." He was further asked on direct examination where he was born and about a number of places where he had lived. On cross-examination he testified that John's Tobacco Store was owned by Sarah Wood, a widow. Then over defendant's objection he was interrogated as to whom he was living with at the time of the accident and he testified that he roomed at John's Tobacco Store part of the time

and that he was at Sal Wood's liquor store until he went to the American Legion Hall that night. The law is well established that the state is not limited to a mere categorical review of the matters referred to in chief, but may make a detailed inquiry into the matters which have been referred to only in a general way on direct examination. Section 546.260; State v. Kaufman, Mo., 254 S.W.2d 640, 641 [2]; State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920, 924 [7]. The cross-examination was within the scope of the examination in chief and the defendant's rights were not violated. State v. Cooley, Mo., 221 S.W.2d 480, 486 [15]; State v. Stokes, 288 Mo. 539, 232 S.W. 106, 109 [1, 2].

■ During the oral argument defendant's counsel undertook to comment upon the failure of the state to call the widow of Ivan Glea Rogers as a witness, saying that the state elected to leave her home. The court sustained the objection of the prosecuting attorney to this line of argument, saying that Mrs. Rogers was equally available to both sides. The deposition of Mrs. Rogers was taken and read in evidence by the defendant. The trial court has a wide discretion in determining the latitude permitted in the argument of counsel and it is readily apparent that such discretion was not abused. State v. Beasley, 353 Mo. 392, 182 S.W.2d 541, 544 [8].

■ Defendant complains of the giving of Instruction No. 3 defining culpable negligence. The question he seeks to present is not preserved for review because the transcript fails to disclose that he objected to the giving of this, or any other, instruction. State v. Rush, Mo., 286 S.W.2d 767, 772 [7]; State v. Lawson, Mo., 290 S.W.2d 84, 86 [1, 2]. Regardless of that omission, however, the contention is without merit because an instruction identical in terms with Instruction No. 3 was approved in State v. Hinojosa, Mo., 242

S.W.2d 1, 9 [15]. Also, Instruction "E", evidently given at defendant's request, further defines culpable negligence. This and Instruction No. 3 are in harmony and must be read together; they leave the defendant without ground for complaint. State v. Studebaker, 334 Mo. 471, 66 S.W.2d 877, 882 [4].

■ The defendant next charges that the verdict was the result of passion and prejudice and also excessive because of the testimony of Sergeant Wahn with respect to the defendant's being intoxicated as shown by the blood test. The jury assessed defendant's punishment at nine years' imprisonment in the state penitentiary, which was within the limits of not less than two nor more than ten years prescribed by § 559.140. Where the punishment assessed is within the limits prescribed by law, it cannot be adjudged to be excessive in the absence of some showing not apparent in this record. State v. Copeland, 335 Mo. 140, 71 S.W.2d 746, 752 [11]; State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 109 [41].

■ For his final point the defendant states without citation of authority that error was committed in permitting Dr. L. E. Dean to testify as to the nature of the injuries that caused Rogers' death after the witness had refreshed his memory by examination of the death certificate. The witness was the coroner of Nodaway County; he examined the body, presided over the inquest and signed the death certificate. The court did not err in permitting him to refresh his recollection from the death certificate which he had prepared and signed. State v. Hinojosa, Mo., 242 S.W.2d 1, 8 [12].

For the errors noted, the judgment is reversed and the cause is remanded for a new trial.

All concur.