**STATE of Missouri, Plaintiff-Respondent,**

v.

**Ed HILL, Defendant-Appellant.**

**No. 53327.**

Supreme Court of Missouri,
Division No. 1.

Dec. 9, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Gene B. Rosen, Sp. Asst. Atty. Gen., St. Louis, for respondent.

James Haw, Charleston, for defendant-appellant.

HENLEY, Presiding Judge.

Defendant was charged by information with molesting a minor by taking indecent or improper liberties with his person, a graded felony. Section 563.160.[1] Specifically, defendant was charged with placing in his mouth the penis of one Ronald Wayne Radcliffe. A jury found defendant guilty as charged and assessed his punishment at a fine of $100 and imprisonment in the county jail for a period of six months. His motion for new trial was overruled, he was sentenced in accordance with the verdict, and he appeals. We affirm.

The primary issues presented relate to (1) whether the evidence is sufficient to sustain the conviction; and (2) whether the court erred in refusing to permit defendant to cross-examine a police officer regarding the officer's employment record and thereby show facts affecting the witness' credibility.

Ronald Wayne Radcliffe, age 16 years at the time of the offense charged, testified that in the late afternoon or early evening of October 3, 1966, he and his friend Howard Tony met at a pool room in Charleston, Missouri; that Howard told him Ed Hill (defendant), an employee of Charleston and East Prairie radio stations, would be by the pool room later and they were going driving; that Howard asked him to go along for the drive. They played a game

[1]. All section references are to Revised Statutes of Missouri, 1959, and V.A.M.S.

of pool and shortly thereafter Hill drove up and the two boys got in the car with him. Radcliffe further testified that they drove around the countryside for quite some time drinking beer; that they stopped on the edge of East Prairie, bought more beer, and then drove to the East Prairie radio station; that by this time he (Radcliffe) was drunk; that defendant got out of the car and unlocked the radio station; that as he (Radcliffe) was getting out of the car he saw a policeman (Bobby Norman) drive by and stop; that, being afraid the policeman would arrest him for drunkenness, he ran into the radio station and hid in a back room; that the policeman was stopped in the front part of the station by defendant and later left. Radcliffe further testified that thereafter he, Howard and defendant continued to drink beer at the station and later in the evening he "passed-out"; that Howard and defendant undressed him and put him to bed in a bedroom part of the radio station quarters, and that Howard then went to bed in another room; that he roused momentarily several times during the night only to "pass-out" and go back to sleep; that on the last occasion he awoke to find defendant in bed with him, hugging and kissing him and sucking on his penis; that he shoved defendant off, got up, dressed, and stumbled or walked around in the radio station, not knowing what to do; that he secured defendant's car keys and took the car to drive around in East Prairie. During this drive he was arrested and put in the local jail.

Howard Tony testified. In general, he corroborated the testimony of Radcliffe pertaining to the events of that evening, except in these two particulars: he said that he removed Radcliffe's shoes only and that he alone put Radcliffe to bed. He further testified that he then went to bed in another room, slept throughout the balance of the night, and knew nothing of the assault upon Radcliffe; that he does not know an Alberta Fullmer (a witness for defendant); that he did not see a Miss Fullmer at the radio station that night.

Bobby Norman, an officer of the East Prairie police force on the date of the offense charged, testified that while patrolling in the police car that night he saw a drunk boy run from beside defendant's car into the radio station; that he stopped his car and went to the radio station to arrest this boy; that defendant "blocked the doorway" and would not let him go inside, saying that he (the officer) " * * * had no business inside his place * * * without a search warrant * * * "; that while he and defendant were standing outside discussing this matter, he saw another boy, Howard Tony, come out of the radio station.

The officer further testified, on cross-examination, that he had had no previous trouble or arguments with defendant; that he continued to work for the East Prairie police department for about two months and then resigned; that he had been convicted previously of crimes, i. e., for shooting a duck out of season and for overweight violations while he was in the trucking business and for non-support when he refused to pay an alimony judgment. Counsel for defendant sought to show further by cross-examination that the officer's resignation from the East Prairie police department was "by request"; that he was subsequently " * * * employed by the Charleston police force, served there only a short period of time and was either fired or resigned by request, and he went to Sikeston and is on the police force then [sic] * * * under probation * * * ." The court sustained an objection to this offer of proof.

Defendant testified that he saw all three (Howard Tony, Ronald Wayne Radcliffe and Bobby Norman) on October 3, 1966; that Howard rode with him to Charleston late that afternoon and, after going to the Charleston radio station, he later picked up Howard at a pool room, but he denies that he picked up Radcliffe with Howard at the pool room; on the contrary, he says that he and Howard were driving around the countryside and picked up Radcliffe

who was hitchhiking toward Sikeston. He further testified that Radcliffe decided to go to East Prairie with them; that they rode around for some time, finally arriving at the radio station in East Prairie; that his friend, Alberta Fullmer, was in the radio station control room when he unlocked the door; that Howard and the Radcliffe boy stayed in the car. He further testified that after going into the control room to speak to Miss Fullmer and tell her that Howard was going to spend the night there, he returned to the front office room where he met officer Bobby Norman; that the officer insisted " * * * he was going to search the building for the Radcliffe boy * * *"; that he told the officer that he needed a warrant to search the premises, and the officer left; that Howard Tony entered the radio station after the officer left; that Radcliffe did not enter the station; that he later went out to this car to roll up its windows and get two six-packs of beer he had placed in the car earlier that day, and found that Radcliffe had left. Further testifying, he categorically denied (1) that during the drive he or the two boys drank any beer; (2) that he committed the acts with which he was charged, stating that Radcliffe was not even inside the radio station at any time during that night. He further testified that only he, Miss Fullmer and Howard Tony spent the night at the radio station.

Alberta Fullmer, age 50, a resident of Metropolis, Illinois, testified on behalf of defendant that she spent the night of October 3, 1966, in the radio station at East Prairie; that defendant returned to the station about nine o'clock that night; that Howard Tony was with him; that she does not know a Ronald Wayne Radcliffe; that Radcliffe did not return to the station with defendant and Howard and did not spend the night at the station; that only she, defendant and Howard Tony spent that night at the radio station; that a police officer came to the station about the time defendant returned, demanding to search the premises for a missing boy and

that defendant refused to let the officer search, because he did not have a search warrant.

Defendant contends that the evidence is not sufficient to sustain the conviction, because, he says, it is based solely on the testimony of Radcliffe who, admittedly, was so drunk that he "passed-out" from time to time; that Radcliffe's testimony was incredible, not worthy of belief, entitled to no weight and, therefore, was not substantial evidence sufficient to sustain the conviction. A related point in defendant's brief is that the court erred in refusing to give his "instructions for a directed verdict" offered at the close of the state's case and at the close of all the evidence.

■ The testimony of Radcliffe alone was substantial evidence sufficient to submit the case to the jury. It was for the jury to believe or disbelieve that evidence, for the jury is the sole judge of the credibility of the witnesses and the weight and value to be given to their testimony. We hold that the evidence is sufficient to sustain the conviction, and that the court did not err in refusing to direct the jury to return a verdict for defendant. State v. Martin, Mo., 275 S.W.2d 336, 338 [5, 6]. State v. Wilson, Mo., 320 S.W.2d 525; State v. Childers, Mo., 268 S.W.2d 858, 860 [1]; State v. Mathews, Mo., 328 S.W.2d 642, 644 [1, 2]; State v. Daegele, Mo., 302 S.W.2d 20, 23 [4].

Defendant next contends that the court erred in refusing to permit him to show by cross-examination of officer Bobby Norman that the officer (1) resigned from the East Prairie police department "by request"; (2) was thereafter employed by the Charleston police department a short time and was either "fired" or "resigned by request"; and (3) is now employed on the Sikeston police force under probation.

In connection with this contention we note at the outset that the officer's testimony does not extend beyond what the defendant and his witness, Miss Fullmer,

testified to as to the events that occurred upon the officer's arrival at the radio station, except that the officer stated that he saw an unidentified boy, drunk, run from the street into the radio station. We note also that defendant did cross-examine the officer as to other facts affecting his credibility, viz., that he had been convicted of crimes.

The court said in State v. Winn, Mo., 324 S.W.2d 637, l. c. 642: "Necessarily, the trial court is permitted much discretion in determining, and limiting, the scope of cross-examination. State v. Murrell, Mo., 169 S.W.2d 409. Particularly is this true as to collateral matters. State v. Burchett, Mo., 302 S.W.2d 9, 18. The defendant is entitled to 'a reasonable cross-examination' for the purpose of impeachment (State v. Thompson, Mo., 280 S.W.2d 838, 841) or otherwise, and he should be allowed a reasonable latitude in cross-examination in order to 'place the witness in his proper setting' (Thompson, supra), but there is a limit. State v. Rose, 339 Mo. 317, 96 S.W. 2d 498, 504. * * * There often remains a shadowy line of distinction between the permissible and the nonpermissible cross-examination, the exact location of which must generally be left to the trial court."

We have here a witness, a police officer, whose direct testimony was, for the most part, limited to facts about which there was no dispute; his direct testimony was brief and it related to the confrontation between the officer and defendant in front of the radio station; in general, it agreed with the testimony of defendant and his witness, Miss Fullmer, except that the officer said he saw an unidentified drunk boy run inside the radio station. It was in this situation that the trial judge was called upon to rule whether defendant should be permitted to further cross-examine the officer on a collateral matter: the officer's employment record. The officer's credibility was effectively attacked, by showing that he had been convicted of crimes. Did the court abuse its discretion in not permitting the cross-examination to extend to inquiry about the officer's employment record? We hold that, in the circumstances of this case, it did not.

Another point in defendant's brief is: "Defendant must be convicted of the offense with which he is charged and no other." We turned to the record and the argument portion of his brief and reply brief to attempt to learn what he means by the quoted statement, to no avail. If defendant means that he was convicted of an offense other than that with which he was charged, he is not supported by the record. The point is not sufficient to present anything for review and will not be further noticed. State v. Livers, Mo., 340 S.W.2d 21, 25 [2].

An examination of the record as required by Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

STORCKMAN, J., and DOWD, Special J., concur.

SEILER, J., not sitting.